THE FIREMEN'S BENEVOLENT ASSOCIATION, Plaintiff in Error, *v.* WALES B. LOUNSBURY, Defendant in Error.

### ERROR TO COOK.

The legislature has the right to provide, that foreign fire insurance companies may be burthened for the benefit of the Chicago Firemen's Benevolent Association, and that the revenue resulting from such burthens, need not be paid into the state treasury.

That the burthen imposed, is not incompatible with the title of the bill authorizing it, and that the whole is properly expressed, by the title of the bill.

THIS was an action of debt in the court below, brought to recover of the defendant in error, the two per cent. mentioned in the sixth section of an act, entitled, " An Act to incorporate the Firemen's Benevolent Association, and for other purposes," approved June 21st, 1852.

This section is as follows :

" There shall be paid· to the treasurer of said association, for the use and benefit of such association, by every person who shall act in the city of Chicago, as agent for, or on behalf of any individual or association of individuals, not incorporated by the laws of this State, to effect insurances against loss or injury by fire, in the city of Chicago, although such individuals or association, may be incorporated for that purpose, by another State or country, the sum of two dollars upon the hundred dollars, and at that rate, upon the amount of all premiums, which, during the year or part of year, ending on the next preceding first day of December, shall have been received by such agent or person, or received by any other person for him, or shall have been agreed to be paid for any insurance effected or agreed to be effected or promised by him, as such agent or otherwise, against loss or injury by fire, in the city of Chicago."

The defendant below demurred generally to the declaration, and the principal question raised upon the argument, was the legality of the charter of the Firemen's Benevolent Association, and particularly of the 6th section, quoted above. The demurrer was sustained by the Circuit Court, MANNIERE, Judge, presiding, and the plaintiff in error brings the case to this court, assigning as error, the ruling of the Circuit Court on the demurrer.

Such portions of the act of incorporation as are necessary to be referred to, are contained in the following sections :

Sec. 1.   Incorporates all such persons as now are, or here-after may become members of the Firemen's Benevolent Association of the city of Chicago, in accordance with the provisions of the constitution of said association, and the by-laws of the

board of directors of said association, under the name of the "Firemen's Benevolent Association of the city of Chicago."

Sec. 2.   Gives said corporation power to make and establish a constitution and by-laws for its own government, and concerning the management and disposition of its own funds, and alter and amend the same at pleasure.

Sec. 3.   The object of the association shall be to create a fund and provide means for the *relief of the distressed, sick, injured or disabled members thereof, and their immediate families;* and *all the property and money* acquired by said association, shall be held and used *solely for that purpose.*

Sec. 4.   Authorizes the association to take interest upon the loan of money, at the rate of twelve per cent. in advance, per annum.

Sec. 6.   Is set forth above.

Sec. 7.   Requires the agent to execute and deliver to the treasurer of said association, a *bond* in the penal sum of one thousand dollars, *with such sureties as the said treasurer shall approve,* with a condition that he will annually, on the first day of January, of each year, render to said treasurer a just and true account, under oath, of all premiums received by him or agreed to be paid, during the year ending on the first day of December, preceding such report, *for any insurance against loss or injury by fire, in the city of Chicago,* effected or promised to be effected from any individual or individuals or association, not incorporated by the laws of this State, and annually pay to said treasurer, the sum of two dollars upon every hundred dollars, and at that rate upon the amount of such premiums.

Sec. 8.   Every person who shall effect any insurance specified in the preceding sections of this act, without having executed and delivered such bond, shall for each offense, forfeit one thousand dollars, for the use of said association.

Sec. 9.   Requires, under a penalty of five hundred dollars, to be recovered and collected in the name and for the use of said association, that every agent shall report in writing, under his proper signature, to the treasurer of said association, every removal or change of his place of doing business in said city, designating in such report, the individual or individuals and association or associations, for which he may be such agent or otherwise.

Sec. 10.   Repeals all the provisions of sections 22, 23 and 24, of chapter 64, entitled "Licenses," of the Revised Statutes, *so far as they relate to fire insurance or fire insurance agents in the city of Chicago.*

E. AND A. AND J. VAN BUREN, for Plaintiff in Error.

E. C. LARNED, HOOPER, CAUSIN & SHERMAN, and JAMES P. ROOT, for Defendant in Error.

CATON, C. J.   The only question which has been discussed and which we propose to decide in this case is, whether the legislature had a right to pass the sixth section of the act incorporating the plaintiffs.   This legislative power is denied, upon grounds which may be reduced to two distinct propositions. First it is said, that the legislature had no right to impose this burthen for any purpose or object; and second, it is urged, that if the first is not sustained, the legislature had no right to impose this burthen for this object.

Every principle and objection involved in the first proposition is distinctly settled and deliberately overruled by this court in the case of *Thurber* v. *The People*, 13 Ill. R. 554.   The question has now again been fully considered, and that case carefully re-examined, and we are satisfied that the question was there correctly decided; and we do not feel inclined to repeat the reasons there assigned, or to extend the argument there advanced in support of this exercise of legislative power.   Much might be added to what has been there said, in support of the conclusion then and now arrived at by the court, but we do not deem it our duty to do so.

The other objection is, that here a revenue is attempted to be raised, not for State purposes, nor yet to meet any public exigency or want, but purely for the benefit of a private charity. That it is not required to be paid into the State treasury but must be paid to this private corporation, for whose benefit the burthen is imposed.

The general grant of legislative power, found in the constitution confers upon the general assembly all legislative power, and authorizes the law-makers to pass any laws and do any acts which are embraced in the broad and general word *legislation*, as known and defined in the English language.   It authorizes the passage of any law which could be enacted in the most despotic government.   It even authorizes everything which the people could enact in their primary capacity.   Anything which they would have a right to embody in the constitution itself.   After this broad grant of legislative power, the constitution in various provisions proceeds to limit and restrain its exercise.   So far as was deemed necessary to prevent oppressive and unjust legislation, and only to the extent of these limitations, has the legislative power thus granted been circumscribed, and beyond these limitations, the power exists in its full vigor.   Hence the neces-

33

sity, whenever it is alleged that the legislature has transcended its powers, to point out some restriction or limitation, which has been disregarded. It is not pretended that there is any express provision in the constitution, inhibiting the legislature, from passing any law which shall impose a burthen upon some members of the community, which shall be devoted to the benefit of other members. There is nothing to be found in the constitution which can be held to inhibit the legislature from imposing burthens, or raising money from citizens of the State, which is not for the direct benefit of the State, and is never designed to belong to the State. To deprive the legislature of this power, would to a great extent destroy its usefulness—while it would to a certain extent, deprive it of the power of abuse, it would destroy its power to regulate by law a thousand things, which the public good requires should be regulated by law. It is astonishing how fertile the modern mind is in theorizing, too often without reflecting where these happy theories would lead us. Let us once hold that the legislature could not compel any citizen to submit to a burthen, except for the benefit of the State aggregate, or for some subdivision of it, as a county, city or town, or to pay any money except it shall go into the State or some subordinate public treasury, and we should soon find ourselves on the brink of anarchy itself—we should tie up the hands of the legislature it is true, so that they might not do some evils which they have hitherto had the power of doing; but we should also let loose upon society ten thousand evils, which in every well regulated community it has always been the duty of the legislature to suppress. It is in the exercise of this indispensable power, that ferries, toll bridges and the like are licensed or chartered. The legislature, finding it necessary to afford especial encouragement to private enterprise to erect a bridge or a ferry, has ever exercised the power of imposing a burthen on some, for the benefit of others. Who ever doubted the right of the legislature to charter a bridge and to require all persons crossing the stream within certain limits, to pay the tolls, whether they cross on the bridge or not? It is the exercise of the same power, which fixes the fees of officers for the performance of certain services. It is the power which the legislature possesses, of imposing burthens upon certain members of the community who are supposed to be benefited, by the efforts or acts of certain other members of the community, as a reward or compensation for such acts. This power is only exercised by prudent and judicious legislators, where it is supposed that the public have a general interest in the acts thus encouraged, and the individuals or classes upon whom the burthen is imposed, have a particular interest in the performance of the acts. It

would fill a volume to enumerate all the familiar instances of the exercise of this power—a power which must be exercised constantly in every civilized community, or the well being of that community must vitally suffer. This power may no doubt be abused, by an unjust and oppressive exercise of it. There are some whose minds are constantly exercised by harrowing apprehensions of terrible calamities to befall individuals and states, by an abuse of the powers, with which public officers are entrusted, and to avoid such dangers, would deprive the legislature of all power to do mischief, without remembering that at the same time they deprive them of power to do good. A large discretion must necessarily be left with the legislature for the proper and judicious exercise of which, there can be no accountability, but to those who elect them. In this case we are far from the opinion that there has been any abuse of the exercise of that discretion. The legislature incorporated this charity, which was deemed worthy of some sort of an endowment. It might have been endowed from the public treasury, and a fund for that purpose, provided by any legitimate mode of raising a revenue. A charge of a percentage upon the gross receipts by the agents of underwriters, we had in *Thurber's Case*, decided to be a legitimate source of revenue. The legislature in its wisdom and in the exercise of its discretion, thought proper to divert this fund to the direct endowment of this charity, which was instituted for those, who should be disabled while in a service, the general effect of which, is for the direct benefit of underwriters, and to what source therefore could they more properly look, than to those in whose service, the objects of this charity would receive the injuries, entitling them to the benefits of the charity? It is in fact a burthen not upon the agent personally, nor yet upon the underwriter, but upon the assured, for the premium will always be graduated in view of every risk and every expense incurred by the assurer; as well as the encouragement afforded to the fire department and its efficiency.

With the view we take of this case, it is immaterial, whether this be considered a public or a private charity. But it should more properly be considered a public charity. As such, the legislature had a right to consider it, as much as the institution for the blind. It might have conferred upon it, the right to take and condemn private property for a site for the building, as well as to confer upon a railroad company the right to take private property for a road way.

We think the sixth section germane to the objects of the bill and embraced properly in the same subject, the whole of which, is sufficiently expressed in the title.

After a careful consideration of the case, we are of opinion that none of the objections to the constitutionality of the act are tenable, and that the demurrer to the declaration should have been overruled.

The judgment must be reversed and the cause remanded.

*Judgment reversed.*