## GUNTER *vs.* DALE COUNTY.

[SUIT AGAINST COUNTY, UNDER "ACT TO SUPPRESS MURDER, LYNCHING, AND ASSAULTS AND BATTERIES," APPROVED DECEMBER 28, 1868.]

1. *"Act to suppress murder, lynching, and assaults and batteries,"* approved *December* 28th, 1868; *construction of; what not necessary to allege in complaint framed under.*—It is not necessary, in a complaint framed under the "Act to suppress murder, lynching, and assaults and batteries," approved December 28th, 1868, to allege therein that "the murder or assassination was on account of past or present party affiliation, or political opinion." A count which conforms to the requirements of the second section of the act is sufficient without such allegation.

2. *Same; constitutionality of.*—Said act is a valid law of this State. It is not obnoxious to the second section of article 5, of the constitution of Alabama; it is upon but one subject matter, though it deals with several branches thereof.

APPEAL from Circuit Court of Dale.
Tried before Hon. J. McCaleb Wiley.

The facts are fully set out in the opinion.

W. C. OATES, for appellant.—The language of the section is, "whenever in any county of this State, *any person* shall be assassinated or murdered by any outlaw, or person, or persons in disguise, or mob, &c.,   *   *   *   the widow or husband of such person, so murdered or assassinated, &c.,   *   *   *   shall be entitled to recover of the county, in which such murder or assassination occurred, the sum of five thousand dollars, &c.,   *   *   *   for such murder or assassination, &c."   *   *   *   If the construction of the court below be correct, the words, "any outlaw, or person, or persons in disguise, or mob," quoted above, are supererogatory and useless, and have no field to operate on.   The words in the statute, following those above quoted, "*or for past or present party affiliation, or political opinion,*" do not qualify and limit those used in the preceding part of said section, because the words "*or for*" disconnect the latter part of the section, and is complete within itself, showing that the intention of the legislature was, under the first clause of the section, to make the county liable whenever any person is murdered or assassinated within it by a mob, by a person or persons in disguise, or by any outlaw, without regard to the cause of the killing, and without regard to the motive which actuated the slayer in the performance of the bloody deed.   And that the latter clause, to-wit, "or for past or present party affiliation, or political opinion," was intended to fix the liability of the county to pay the penalty whenever a person is murdered or assassinated within it, *by any person whomsoever*, whether disguised or not, an outlaw or a gentleman of former good character, if the murder or assassination be *committed on account of party affiliation, or political opinion* of the person slain.   This is the only construction of which the statute is susceptible, to give operation and effect to each part of it.

2. There can be no doubt of the power of the legislature to enact the law.   The legislative power of the State is restricted alone by the State and federal constitutions. *Dorman v. The State*, 34 Ala. 216, and authorities there

collected and cited in the opinion of the court; Cooley on Constitutional Limitations, § 7, *et seq.*

The law was passed to prevent the commission of crime, by making the officers and people of the county vigilant in arresting and bringing to justice the greatest malefactors; thus, being a law to promote the peace and tranquillity of the public, it should be faithfully and fully enforced.

This law is not without precedent, as a similar law existed in England for ages, the beneficial effects of which have frequently been alluded to in terms of high commendation.—Hale's Pleas of the Crown, volume 1, chap. 35, and Hume's History of England.

The appellee raises a question as to the constitutionality of the act, under which the suit was brought in the court below. *Tuskaloosa Bridge Company v. Olmstead*, 41 Ala., and *Lapsley v. Weaver*, 43 Ala., when carefully examined, I think, fully settle the question in favor of the constitutionality of the law.

The word "outlaw," used in the statute, has a technical meaning, but the legislature could not have used it in that sense, as "outlawry" is unknown in American jurisprudence. Outlawry is "putting a man out of the protection of the law, so that he is incapable to bring an action for redress of injuries, &c."—3 Blackstone, 284. Every one in Alabama, or within the American Union, is entitled to the protection of the law, for his life, liberty, and property.—See the constitutions, State and Federal.

W. D. WOOD, and J. M. CARMICHAEL, *contra.*—1. The act of the legislature, which, it is claimed by appellant, confers a right of action in a case like this, it seems, is unconstitutional—1st. Because the subject matter of the act is not clearly expressed in its title; and 2d, because it contains more than one subject.—Sec. 2, art. 4, of the Constitution of the State. It is also unconstitutional, because contrary to natural right, and the institutions and public policy of the State.

2. The manifest object of the legislature in passing this act, was to protect the citizens of Alabama in their

party affiliations, and in the free exercise of their political opinions, and it is necessary, in an action founded upon said act, to aver that the person was murdered or assassinated on account of past or present party affiliation, or political opinion. The complaint of the plaintiff fails to make such averment. For this reason, as well as because said act of the legislature is unconstitutional, the demurrer to the declaration interposed in the court below was rightfully sustained.

PETERS, J.—This is an action founded upon a statute of the general assembly of this State, entitled "An act to suppress murder, lynching, and assaults and batteries," approved December 28th, 1868.

The first section of this act is in the following words: "That whenever in any county of this State, any person shall be assassinated or murdered by any outlaw, or person or persons in disguise, or mob, *or for* past or present party affiliation or political opinion, the widow or husband of such person so murdered or assassinated, the next of kin of such person, shall be entitled to recover of the county in which such murder or assassination occurred, the sum of five thousand dollars as damages for such murder or assassination, to be distributed among them according to the laws of Alabama, regulating the distribution of the estates of intestate decedents."—Pamph. Acts, 1868, p. 452.

Under authority of this act the appellant, Mrs. Gunter, brought suit against the county of Dale on the 28th day of February, 1870. The complaint contained five counts. The first count is copied in the following words, to-wit:

" The plaintiff claims of the defendant five thousand dollars, for that because on or about the 27th day of June, 1869, one William F. Gunter, who at that time was the husband of plaintiff, and whose widow plaintiff now is, was murdered and assassinated in said county of Dale by one Turner Riley, who was then and there an outlaw, and the said assassination and murder was done more than six months before the commencement of this suit, to-wit, on or about the 27th day of June, 1869."

The other counts in the complaint were similar to this, except in the description of the person who did the killing, or in the manner of the killing, so as to conform to the precise language of the statute in these particulars.

There was a demurrer to the whole complaint. The grounds of the demurrer were as follows—1st. The complaint fails to show a meritorious or any cause of action; 2nd. The complaint fails to aver that the alleged murder or assassination was on account of past or present party affiliation or political ⋆opinion ; 3d. The complaint fails to state that W. T. Gunter, the alleged husband of the plaintiff, was murdered or assassinated on account of past or present party affiliation or political opinion.

Upon the hearing of the demurrer, the same was sustained by the court. Whereupon the plaintiff took a non-suit, and appealed to this court. And here the sustaining of the demurrer in the court below is assigned for error. Rev. Code, § 2759.

The second section of the act above quoted directs the manner of proceeding to recover the damages given in the first section of the same act. It is in these words :

" That said damages allowed in section one of this act shall be recoverable in the following manner : The claimant shall, after the expiration of six months from the murder or assassination aforesaid, bring an action in the circuit court of the proper county, by summons and complaint against the county, *alleging the murder or assassination of such person in said county by an outlaw, or person or persons in disguise, riot or mob, and that it was done at least six months before the commencement of the suit.* The subsequent proceedings shall be according to the laws of the State and the rules of practice in suits between individuals."—Pamph. Acts 1868, p. 452.

A very slight examination of this section of the act in question will show that the complaint is framed in strict conformity to its requirements. This is enough to make the complaint sufficient.—Rev. Code, § 2629 ; *Randolph v. Sharpe,* 42 Ala. 266 ; *Letondal v. Huguenin,* 26 Ala. 552. This section of the act which prescribes the form of the action does not require that it shall be alleged that the

murder or assassination " was on account of past or present party affiliation or political opinion." It was then no error to fail to make this averment in the complaint. This appears also from the language of the first section itself. That clearly shows that the assassination denounced by the law is such as has been committed, (1,) " by any outlaw ;" (2,) or by any " person or persons in disguise ;" (3,) or by any " mob ;" (4,) " *or for* past or present party affiliation or political opinion." The word *or*, as used in this sentence, is separative and alternative. It clearly indicates that any one of several independent particulars may be taken, and it does not attach the incidents of " party affiliation or political opinion" to all the different modes of incurring the penalties of the statute, mentioned in the section. The assassination or murder of any person in this State " for past or present party affiliation or political opinion," is itself such a violation of law as subjects the county to liability for the damages given by the enactment.

There can scarcely be a well entertained doubt in any sane mind that the protection of the life and liberty of the citizen is one of the chief objects of all civil governments. Decl. of Ind; Rev. Code, p. 1. Protection and allegiance are reciprocal. This principle forms the basis upon which all loyalty is founded by which the citizen yields up not only his property but his life for the public good.—*Reed v. United States*, 3 Quart. Law Journ. 122 ; *United States v. Mose*, 3 Cr. 160 ; 1 Bla. Com. 3∪6, marg. ; 2 Kent, 39, *et seq*. The powers of the government, to devise means for the accomplishment of this important end, are without any limitation. All the criminal law of the State rests upon this basis. Even life may be taken to protect life. And this is the reason which finally underlies the justification of all capital punishments and all fines and imprisonments.— *Oliver v. The State*, 17 Ala. 587. The law does not take an assassin's life in mere revenge or retaliation, but to prevent a repetition of his crime.—Rev. Code, § 3654.

The weight of the most recent decisions of this State is to the effect, that the legislature of the people is supreme in all cases, where there is no limitation imposed by the Federal or State constitutions.—*Dorman v. The State*, 34

Ala. 216, 230; Cooley, p. 85, *et seq*. 572; *People v. Draper*, 15 N. Y. Rep. (Denio) 543; *Thorpe v. Rutland & Burlington R. R.*, 27 Vt. 142. The legislature declares this will by its enactments.

The law involved in this litigation is not a novelty, nor is it founded upon principles which have been tried and have failed, or which have been condemned by statesmen and legislators of the highest ability.

The English government is one of the oldest and one of the most powerful in Europe, and possibly, in the world. And it has been one of the most successful in its efforts to protect the lives, the peace and liberty of its people. From it we derive our social habits and the larger portions of our own law, and the principles by which these laws are justified.—Cooley, p. 21, *et seq*. For the purpose of protecting the citizen against robbery and assassination, that government, from a very early date, made a portion of the people responsible for the robberies and assassinations committed within certain prescribed bounds. This is also a principle of universal national law, as is well known to every intelligent student of history and jurisprudence. This is too well established and admitted to need the quotation of authorities.—Whea. Inter. Law; Lawrence, 173, 179, *Kostza's Case*.

In the common law system, which, to a very great extent, is our system, the legislators of the mother county, taking the natural division of the people into families as a basis, combined these families into tithings; the tithings into hundreds, and the hundreds into counties. The tithing was ten families; the hundred was ten tithings; and the county an indefinite number of hundreds.—1 Bla. Com. 116, 117, (marg.)

The communities of hundreds, consisting of ten families, were held responsible for many mischiefs and robberies, which were committed among them, when the guilty party was suffered to escape without conviction. This is still the law of the mother country, and it has been found to work well in aiding the suppression of secret crime, or as Judge Blackstone says, crimes committed " by persons in disguise or with their faces blacked."—4 Bla. Com. 246,

(marg.); 4 Steph. Com. 275 ; 1 Hale Pl. Cr. p. 447, Ch. 35, Dublin edition, 1778. The general assembly of this State have in this statute simply applied this ancient, universal, and salutary principle of protection for the lives of its citizens to our own law.

This statute is not obnoxious to the second section of the fifth article of the constitution of this State. It contains but one subject, though it deals with several branches of that subject, but they are all attingent and cognate to one subject matter—the suppression of certain offenses. This is a sufficient compliance with the purpose of the fundamental law, to rescue it from the vice of unconstitutionality.—Const. of Ala. 1867, Art 5, § 2 ; *Martin v. Hewitt*, June term, 1870.

The judgment is reversed and the cause remanded for a new trial.