# Phœnix Assurance Company of London v. Fire Department of the City of Montgomery.

*Action against Fire Insurance Company to recover Penalty for Violation of Statute.*

1. *Constitutional law; validity of statute extending provisions of former statute.*—The statute approved February 26, 1872, entitled "An act to extend to the fire companies in the city of Montgomery the benefit of an act to raise a fund for the benefit of the fire companies

in the city of Mobile, approved March 1, 1870." (Acts of 1871-72, p. 390), by the provisions of which there was an extension to the fire companies or fire department of the city of Montgomery of all the rights and privileges, of all the duties and of all the remedies, which, by the act referred to, were conferred upon, or enjoyed by, the fire companies of the city of Mobile, is not violative of section 2 of Article IV of the Constitution of 1868, then in force, which provided that "no law shall be revised or amended, unless the act contain the entire act revised, or the section or sections so amended;" said statute not being an amendment or revision of the former statute, but belonging to the class of statutes, known as "reference statutes," which refer to, and by the reference adopt wholly or partially, pre-existing statutes, and which, under the Constitution of 1868, were valid.

2. *Same; taxation; tax on insurance companias for benefit of fire companies is a public tax.*—The statutes approved March 1, 1870 (Acts of 1869-70, p. 288), February 26, 1872 (Acts, 1871-72, p. 390), and February 28, 1873 (Acts, 1872-73, p. 262), requiring that all fire insurance companies opening an office in the city of Montgomery, or taking any premiums for insurance against fire within the county of Montgomery, shall pay into the Fire Department of the city of Montgomery an annual sum of $200, which shall be so applied as to enable the fire department to reward superior skill and exertion in the members, to provide for those who may become sick and disabled in the discharge of their duties as firemen, or their families," are not unconstitutional and void, because they impose a specific State tax for private purposes; but the tax so imposed is one levied for public purposes, and is valid and enforceable.

3. *Same; same; same.*—It is no valid objection to such statute that by their provisions, the fire companies or "Fire Department Association" of the city of Montgomery, are made the recipients of the tax imposed, and charged with its administration.

4. *Same; same; privilege tax on insurance companies should be uniform.*—The constitution does not require that taxes, other than taxes on property, shall be uniform, but the requirement is complied with, when the tax is levied equally and uniformly on all subjects of the same class and kind; and when a specific privilege or occupation tax is imposed on all fire insurance companies doing business in a designated locality, the statute imposing such tax is not open to the constitutional objection that the tax is not equal and uniform.

5. *Taxation; privilege tax not invalid because onerous.*—A privilege or occupation tax on a particular business is not invalid because it is onerous as compared with the taxation imposed on other businesses.

APPEAL from the Circuit Court of Montgomery.
Tried before the Hon. JOHN R. TYSON.
This action was brought by the appellee, which was averred to be composed of the several fire companies of

the city of Montgomery, against the appellant, The Phoenix Assurance Company of London ; and sought to recover of the defendant the penalty of $1,000 for having, without paying to the plaintiff the sum of $200, opened an office in the city of Montgomery, and transacted business pertaining to insurance companies.

In the complaint, the plaintiffs claim of the defendant the sum of $1,000, because, as averred therein, "During the year commencing, to-wit, August 1st, 1895, and ending, to-wit, August 1st, 1896, the defendant, being an insurance company, did take, or receive premiums, within the county of Montgomery, and State of Alabama, against fire risks, or did, during said time, open an office for the business of insurance against fire, in the city of Montgomery aforesaid, without having first paid into the Fire Department of the city of Montgomery, the sum of two hundred dollars for said year, as said defendant was, by the provisions of the fourth section of an act of the General Assembly of Alabama, approved March 1st, 1870, entitled, 'An act to raise a fund for the benefit of the fire companies in the city of Mobile,' and an act of the General Assembly of Alabama, approved February 26th, 1872, and entitled, 'An act to extend to the fire companies of the city of Montgomery the benefit of the provisions of an act to raise a fund for the benefit of the fire companies in the city of Mobile.' Which last named act was approved March 1st, 1870. And also an act of the General Assembly of Alabama, approved February 28th, 1873, entitled, 'An act to declare the meaning of an act to extend to the fire companies of the city of Montgomery, the benefit of the provisions of an act to raise a fund for the benefit of the fire companies in the city of Mobile.' Which said last named act was approved February 26th, 1872, required to do."

The complaint then avers that the defendant, being an insurance company and doing business as alleged, without having paid the sum of $200, had violated the provisions of the statutes in such cases made and provided, and had forfeited to the plaintiffs the sum of $1,000, wherefore they instituted suit. To this complaint, the defendant demurred upon the following grounds : "1st. That said act of February 26, 1872, is void in this : That it purports to amend an act of the

legislature approved March 1st, 1870, and does not contain the act, or section or sections amended, in compliance with the constitution of Alabama, 1868, Article IV, section 2. Wherefore the defendant prays judgment. 2d. That plaintiffs have no cause of action, for that said act approved February 28th, 1873, is void in this: That said act purports to amend or revise the act approved February 26th, 1872, and act of March 1st, 1870, and does not contain the act, or section, or sections, as amended, in compliance with the Constitution of Alabama, 1868, Article IV, section 2. 3d. That said acts approved February 26th, 1872, and February 28th, 1873, under which plaintiffs claim recovery, are void in this: That they attempt to revise or amend an act approved March 1st, 1870, but do not contain the acts, or section amended or revised, as required by the Constitution of 1868. 4th. That said act, 1870, is void in this: That it is in conflict with the Constitution and laws of Alabama. 5th. That said act requires a private corporation, defendant, to pay to another private corporation an annual tax of $200. 6th. That said act requires a private corporation, defendant, to pay to a private organization, plaintiff, $200, annually to be used 'to reward the superior skill and exertion of the members [of plaintiffs], to provide for those who may become sick or disabled—as firemen—or their families,' and the Constitution requires such specific annual tax as may be levied by the legislature shall be used exclusively for the maintenance of public schools.—Article XI, section 13. 7th. That said act requires payment of said tax from any company doing business in the county of Mobile, although they have no office and do no business in the city of Mobile."

This demurrer was overruled, and the defendant thereupon interposed eight pleas. The first plea was the general issue, and the second plea after averring that the plaintiff sought to recover $1,000 claimed and payable, by reason of the act approved February 26, 1872, which sought to extend to the fire companies of the city of Montgomery the benefit of the provisions of "An act to raise a fund for the benefit of the fire companies in the city of Mobile," approved March 1, 1870, set out said act in full, and then averred that said act was void and unconstitutional in that it attempts to re-

vise or amend the act approved March 1, 1870, and does not contain the entire act or the section or sections thereof revised, or amended, which was in violation of Article IV, section 2 of the Constitution of 1868. The third plea sets out at length the three acts under which the claim of the plaintiffs is founded, which were approved, respectively, on March 1, 1870, February 26, 1872, and February 28, 1873, and then avers that said act of February 26, 1872, attempting to amend or revise the act for the benefit of the fire companies of the city of Mobile and extending the provisions thereof to the fire companies of the city of Montgomery, was void, in that it did not contain the entire act revised, or the section or sections amended. Each of these acts are sufficiently set forth in the opinion of the court.

The 4th, 5th, 6th, 7th and 8th pleas were as follows :

"4th. That said act approved February 28th, 1873, 'to declare the meaning of' said act approved February 26th, 1872, is void in that it amends or revises said act of February 26th, 1872, but does not contain the entire act revised, or the section or sections amended.

"5th. That said act 'for the benefit of the fire companies in the city of Mobile,' approved March 1st, 1870, is void, in this, that said act is contrary to the Constitution of Alabama, 1868, article I, section 25, by requiring defendant, a private corporation, to annually pay the plaintiffs, a private corporation, a tax.

"6th. That said act 'for the benefit of the fire companies in Mobile,' approved March 1st, 1870, is void, in that it is contrary to article XI, section 13, Constitution of Alabama, viz. : 'The General Assembly shall levy a specific annual tax upon insurance companies and insurance agencies, which shall be exclusively devoted to the maintenance of public schools.' Whereas this act gives said tax to a private corporation, a fire company.

"7th. That said act of 1870, approved March 1st, for the benefit of the fire companies of Mobile, under which plaintiffs claim a recovery in this cause, was repealed by the legislature of Alabama before 1894.

"8th. That plaintiffs are private individuals, that the thousand dollars sued for in this cause is a penalty claimed of defendant for that they did not pay said plaintiffs two hundred dollars, as a tax, for doing busi-

[Phœnix Assur. Co. of London v. Fire Dept. City of Montgomery.]

ness in the city of Montgomery for one year, commencing August 1st, 1895.''

To each of these several pleas, the plaintiff demurred upon the following grounds : ''1st. It clearly appears in and by said plea that the act of the General Assembly of Alabama, approved February 26th, 1872, did not attempt to revise or amend the said act of March 1st, 1870, but merely extended or conferred the provisions of last named act to and upon the fire companies of the city of Montgomery, and is, therefore, not violative of the provisions of the Constitution of 1868, mentioned in the plea. 2d. Because said act of the legislature set out in said plea is not violative of any of the provisions of the Constitution mentioned in said plea. 3d. Because there is, by the act of the General Assembly of Alabama, set out in said plea, no such amendment of said act of the General Assembly of Alabama, approved March 1st, 1870, as is prohibited by article IV, section 2, of the Constitution of Alabama of 1868.''

To the 4th plea the plaintiff demurred upon the following additional grounds : ''1st. Because said fourth plea fails to set out the acts of the General Assembly, approved February 26th, 1872, and February 28th, 1873, referred to in said plea. 2d. Because said fourth plea only states a conclusion of law of the pleader, and does not state the fact, upon which the conclusion is based. 3d. Because said act of February 28th, 1873, does not purport to revise or amend any other act, but simply to declare the true intent and purpose of said act of February 26th, 1872. 4th. Because said fourth plea fails to state what act it is alleged, is revised or amended by said act of February 28th, 1873. 5th. Plaintiff assigns as cause of demurrer the same grounds hereabove assigned to the second and third pleas.''

To the 5th plea the plaintiff demurred upon the following additional grounds : ''1st. Because said fifth plea fails to set out said act of March 1st, 1870. 2d. Because said fifth plea simply states a conclusion of law without setting out the facts from which said conclusion is drawn. 3d. Because said plea does not aver, or show, that said tax is not required, to be paid for the use, or benefit, of a public purpose. 4th. Because said act of the General Assembly of Alabama, approved March 1st, 1870, does not require the payment of tax

for the benefit of any private corporation, but for a public purpose. 5th. Because by the provisions of said act, approved March 1st, 1870, the money so required to be paid by said insurance companies shall inure to the use and benefit of the several fire companies, to enable the fire department to reward superior skill and exertion in the members, to provide for those who may become sick or disabled in the discharge of their duties as firemen, or their families—a public purpose ; and said act of March 1st, 1870, does not require the payment of said sum of two hundred dollars for the benefit of any private corporation, but for a public purpose.''

To the 6th plea the plaintiff demurred upon the following additional grounds : ''1st. Because there is nothing in Article XI, section 13, of the Constitution of Alabama, 1868, which prohibits the General Assembly from levying the tax prescribed in said act of March 1st, 1870. 2d. Because the fact that the Constitution of Alabama, 1868, provides that the General Assembly shall levy a specific tax upon insurance companies and agencies, to be exclusively devoted to the maintenance of public schools, it does not follow that the General Assembly is prohibited from levying, or requiring the payment of the tax or sum prescribed in the said act of March 1st, 1870.''

To the 8th plea the plaintiff demurred upon the following additional ground : '' 1st. Because the said eighth plea fails to aver that said tax is not required to be paid for a public purpose.''

The plaintiff's demurrers to the 2, 3, 4 and 5 pleas were sustained.

To the 7th plea the plaintiff filed a replication, in which it averred : ''That the act of the General Assembly of Alabama, approved March 1st, 1870, mentioned in said plea has not been repealed, so as to affect plaintiffs' right of action herein, for that, the act repealing said act of March 1st, 1870, expressly provides, 'that the repeal of said act shall not apply to the city of Mobile, and shall in no manner affect its operation so far as it is made applicable to the fire companies of the city of Montgomery as provided in an act to declare the meaning of an act to extend to the fire companies in the city of Montgomery, the benefit of the provisions of an

[Phœnix Assur. Co. of London v. Fire Dept. City of Montgomery.]

act to raise a fund for the benefit of the fire companies in the city of Mobile, approved February 26th, 1872, approved February 28th, 1873."

The plaintiff filed a replication to the 8th plea and averred therein that the $200 required by statute was for a public purpose. Issue was then joined on the plea of the general issue and on the replications of the plaintiff to the 7th and 8th pleas.

The cause was tried upon an agreed statement of facts, in which it was admitted that the fire department of the city of Montgomery was, at the time of the approval of the three acts of the General Assembly, upon which the claim was founded, composed of the several fire companies of the city of Montgomery, which were corporations, as stated in said complaint. There was then set forth at length the three acts of the General Assembly, upon which the plaintiffs base their claim for recovery. These acts were approved, respectively, on March 1, 1870, February 26, 1872, and February 28, 1873. It was further admitted in said statement of facts that the defendant, the Phœnix Assurance Company of London was an insurance company, duly incorporated, and that it had, since the first day of August, 1895, prior to the institution of this suit, which was on August 26, 1895, done business as an insurance company in the city of Montgomery, and had failed and refused to pay to the plaintiff the sum of $200, as is required by the acts of the General Assembly hereinabove referred to. There were then set out in the statement of facts the several acts incorporating the several fire companies in the city of Montgomery, and the constitution of the Montgomery Fire department.

All the evidence of the case being contained in the agreed statement of facts, the court thereupon, at the request of the plaintiffs, gave to the jury the general affirmative charge in their behalf, and refused to give to the jury the following charge requested by the defendant: "The court charges the jury, that if they believe the evidence in this case, the plaintiffs are not entitled to recover." To the giving of the charge requested by the plaintiff, and to the refusal to give the charge requested by the defendant, the defendant separately excepted.

There were verdict and judgment for the plaintiffs. The defendant appeals, and assigns as error the rulings

[Phœnix Assur. Co. of London v. Fire Dept. City of Montgomery.]

of the court upon the pleadings, the giving of the general affirmative charge requested by the plaintiffs, and the refusal of the charge asked by the defendant.

. CHAS. WILKINSON, for appellant.—The statutes upon which is based the plaintiff's right of recovery were violative of section 2 of Article IV of the Constitution of 1868. Such act was an amendment of a prior act passed for the benefit of the fire companies of the city of Mobile, the provisions of which were extended by the statute involved in this case.—Bouvier Law Dic. 118 ; Jefferson's Manual, pp. 174, 255 ; Cushing's Law of Legislative Assemblies, pp. 526, 847 ; *Falconer v. Robinson*, 46 Ala. 348 ; *Tuscaloosa Bridge Co. v. Olmstead*, 41 Ala. 18. The mischief designed to be remedied was the enactment of amendatory statutes in terms so blind that legislators were sometimes deceived in regard to their effect, and the public from the difficulty in making necessary comparison and examination to find changes in the law. An amendatory act purporting only to *insert certain* words, or to substitute one phrase for another, in an act only referred to, was calculated to mislead and was often drawn in that form for that express purpose.—Cooley on Const. Limitation, (6 ed.), 181 and note ; Sutherland on Statutory Construction, (last ed.) Chapter 7, § 131 on p. 168 and note ; Sedgwick Const. St. 531 ; *Wilkinson v. Ketler*, 59 Ala. 510 ; *Kennedy v. State*, 85 Ala. 330 ; *Rogers v. Torbut*, 58 Ala. 523 ; *Bolling & Son v. LeGrand*, 87 Ala. 482 ; *Central R. R. & B. Co. v. Lee*, 96 Ala. 444 ; *Stewart v. Court of County Commissioners*, 82 Ala. 209.

An extension is a revision or amendment. Extending is only one method of amending or revising a law. An amendment covers any alteration in a law. An act extending the provisions of a statute is an amendment.—*Hall v. Steele*, 82 Ala. 564 ; *Henderson v. State*, 94 Ala. 95. An act, extending its provisions to a new class by mere reference to the title, or inserting words in certain sections thereof, is directly in conflict with the constitution.—*Evernham v. Hulit*, 45 New Jersey Law, 58 ; *State ex rel. Board of Fire Comm. of Trenton v. Common Council of City of Trenton*, 22 Atlantic Reporter, 731 ; Sutherland on Statutory Construction, p. 168, § 131 ; *Mok v. Detroit B. & S.*, 30 Mich. 512.

7. This $200 required ·of appellant is a tax—being for· revenues, it is admitted by plaintiffs—and so designated by the legislature in acts 1888-99, p. 492, when they repealed the law as to Mobile.—Cooley Const. Limitation, (2d. ed.), pp. 201, 495, 586 ; *Van Hook v. Selma*, 70 Ala. 361 ; Cooley on Taxation, 403, 408-9.

The act in effect gave appellees the right to tax defendant $200 per annum. The legislature can not authorize a private corporation to levy a tax.—Art. IX, Sec. 2, Constitution 1868. The Constitution provided, Art. XI, Sec. 13, 1868, that the General Assembly shall levy a specific annual tax upon railroads, * * insurance corporations and insurance agencies, which shall be *exclusively* devoted to the maintenance of *public schools*. This act attempts to levy a specific tax for the benefit of these private corporations.—*Ellsberry v. Seay*, 83 Ala. 618 ; *Smith v. State*, 11 Atlantic Rep. 321.

LOMAX & LIGON and FARNHAM, CRUM & WEIL, *contra*. It is a familiar and universal rule of law that a statute will not be declared unconstitutional, unless the court is clearly convinced that it cannot stand. All doubts are resolved in favor of its validity. If it is fairly and reasonably open to more than one construction, that construction will be adopted which will reconcile the statute with the constitution and avoid the - consequences of unconstitutionality.—*Zeigler v. S. & N. R. R. Co.*, 58 Ala. 594 ; *Edwards v. Williamson*, 79 Ala. 145 ; *State of Ala. ex rel. v. Rogers*, 107 Ala. 444.

The constitutionality of the enactment involved in this suit is upheld by the case of *Lockhard v. City of Troy*, 48 Ala. 579. The constitutional provision involved relates to those acts relied on as strictly amendatory or revisable in their character.—*Tuscaloosa Bridge Co. v. Olmstead*, 41 Ala. 18.

Contemporaneous construction of a constitution of long duration, continually practiced, under and through which rights have been acquired, ought not to be shaken, but upon the ground of manifest error and cogent necessity ; and contemporaneous legislation is one of the best standards for determining the meaning of laws.—*Harrison v. State*, 85 Am. Dec. 658 ; *Bruce v. Schuyler*, 46

Am. Dec. 447; *Nichols v. City, etc.*, 60 Am. Dec. 636; *Johnston v. State*, 12 L. R. A. 235.

That the acts of 1872 and 1873 are simply *extensions* of the provisions of the law of 1870 and so meant and intended by the legislators, clearly appears by the very words of both the acts themselves and their titles. "*To extend* to the Fire Companies of the city of Montgomery the benefits of the provisions," etc., are the words in the title of the act of 1872, and the same expression appears in the body of the act of 1873. The intention of the legislature as here expressed, that the law of 1870 should be *extended* and not amended, is clear. *McGregor v. Insurance Co.*, 33 N. J. Eq. 181; *McDerment v. Lorillard*, 6 N. Y. Chan. (L. ed.), 136; *Varick v. Briggs*, 3 N. Y. Chan. (L. ed.), 1005; *Morris Canal v. Cen. R. R. Co.*, 16 N. J. Eq. 419; *Pentz v. Simonson*, 3 N. J. Eq. 232. Every constitution is to be interpreted in the light of its own history.—*Maynard v. Board, etc.*, 11 L. R. A. 332. "It is a well settled principle, that constitutions like statutes are properly to be expounded in the light of conditions existing at the time of their adoption; and we look at the antecedent government, consider its system as a whole, and its several parts, and the experiences and practices of its administration, and we consider and weigh the evils of the old system, which the people intend to cure by the new."—*Fox v. McDonald*, 101 Ala. 51. To hold that to *extend or confer* the provisions of a law is simply one mode of amendment, in the sense in which that term is employed in the Constitution of 1868, would be to convict the framers of the Constitution of 1875 of the doing of a useless and senseless thing, in the adoption by them of the amendment referred to.—*Zeigler v. S. & N. R. R. Co., supra.* If it be held that to "*extend or confer*" the provisions of a law is one mode of amendment, then, it is insisted by appellee, that this is not such an *amendment* as is contemplated by and obnoxious to this provision of the Constitution. This provision of the Constitution of 1868, when coupled with the use of the word "revised," undoubtedly was directed against the practice of amendments or revisions of statutes in such way as to effect or change their *original* purpose in reference to the *particular subject embraced therein*, and not to cases where the original and existing law in fact remains unchanged,

[Phœnix Assur. Co. of London v. Fire Dept. City of Montgomery.]

and its provisions are simply extended to a different and distinct subject, locality or institution. The term amendment, as there expressed, undoubtedly refers to acts which are "strictly *amendatory or revisory* in. their character."—*State of Ala., ex rel., v. Rogers,* 107 Ala. 444, *supra ; People v. Squire,* 1 Amer. St. Rep. 898.

BRICKELL, C. J.—The action in which the appellees, averred to compose the Fire Department of the city of Montgomery, were plaintiffs, and the appellant, a foreign fire insurance company, was defendant, was brought to recover of the appellant a penalty of one thousand dollars, for having, without paying to the plaintiffs the sum of two hundred dollars, opened an office in the city of Montgomery, received premiums and taken risks against losses by fire, in and during the year commencing the 1st day of August, 1895, and ending August 1st, 1896. The right of recovery is deduced from certain statutes, upon the validity and construction of which, all the questions presented for revision are dependent.

The first, in order of enactment, is an act approved March 1st, 1870, entitled, "An act to raise a fund for the benefit of the fire companies in the city of Mobile." Pamph. Acts, 1869–70, p. 288. The first section declares it unlawful for any insurance company to take any premium within the county of Mobile against fire, or any river or marine risk, or to open an office in the city of Mobile, unless such company first pay into the Fire Department Association of. Mobile, the sum of two hundred dollars, and a like sum annually thereafter, so long as they may continue to take or make insurance, or open an office for that purpose. The second section declares the money so paid shall inure to the use and benefit of the several fire companies in the city of Mobile, and such as are in the future organized, "to enable the fire department to reward superior skill and exertion in the members ; to provide for those who may become sick and disabled in the discharge of their duties as firemen, or their families." The third section declares, that for these purposes the money may be drawn by the fire department under such rules and regulations as it establishes. The fourth section declares a penalty of one thousand dollars against any company violating the

provisions of the first section, recoverable by suit in the name of the "Fire Department Association;" and the fifth section transfers the recovery after deducting expenses to the same fund to which the tax is appropriated, to be applied to the same purposes.

With this enactment in force, on the 26th February, 1872, an act was approved, entitled "An act to extend to the fire companies in the city of Montgomery, the benefit of the provisions of an act to raise a fund for the benefit of the fire companies in the city of Mobile, approved March 1, 1870."—Pamph. Acts, 1871–72, p. 390. The act contains a single section which reads: "That the provisions of the above mentioned act •of March 1, 1870, *mutatis mutandis*, be and the same are hereby extended and made applicable to the fire companies in the city of Montgomery, and the Fire Department Association of Montgomery; and that, to carry into effect the intent and purposes of this act, the word Montgomery must be deemed and taken as substituted for the word Mobile, wherever the word Mobile occurs in said act of March 1, 1870. *Provided*, nothing herein contained, shall in any manner affect or impair the force and operation which said act of March 1, 1870, had, at and before the passage of this act, in favor of the fire companies in the city of Mobile." This was followed by an act approved February 28, 1873, (Pamph. Acts, 1872–73, p. 262), which reads: "That the true intent and meaning of an act approved February 26, 1872, entitled 'an act to extend to the fire companies in the city of Montgomery, the benefit of the provisions of an act to raise a fund for the benefit of the fire companies in the city of Mobile, approved March 1, 1870,' are hereby declared to be that the provisions of said act are extended to the fire department of the city of Montgomery."

The legislative intent in the enactment of the statutes just referred to, relating to the fire companies, and the fire department association of the city of Montgomery, as the same body or organization is indifferently termed, can not be misapprehended. As clearly expressed in the title of the original enactment, it was the extension to the department or association of the city of Montgomery of the benefit of the provisions of the act of March 1st, 1870, pertaining to the like department of the city of

Mobile. That act conferred on the fire department of Mobile, consisting of the fire companies in existence at the time of its enactment, and such companies as were subsequently organized, the right to demand and receive from each fire insurance company opening an office in the city of Mobile, or taking any premiums within the county of Mobile against fire, or any river or marine risk, an annual contribution of two hundred dollars. The uses to which the fire department were required to apply the contribution were expressly, distinctly declared, "to enable the fire department to reward superior skill and exertion in the members; to provide for those who may become sick and disabled in the discharge of their duties as firemen, or their families." For these, and for no other purposes, was the money to be drawn, under such rules and regulations as the department prescribed. For a violation of any of the provisions of the act—for the opening of an office in the city of Mobile by a fire insurance company, or the taking premiums within the county of Mobile against fire, or any river or marine risk—a penalty of one thousand dollars is inflicted, recoverable by suit in the name of the "Fire Department Association," and the penalty when recovered is transferred, after deducting expenses, to the same fund to which the contribution is appropriated, to be applied to the same purposes. These are the benefits and rights which were conferred on the Fire Department of the city of Mobile, for the uses distinctly declared, and these are the remedies it is authorized to pursue, if these rights and privileges are not regarded. We repeat, the legislative intent in the enactment of the original statute relating to the fire companies or department of the city of Montgomery can not be misapprehended—it is plainly and unambiguously expressed; it is the extension to the companies of all the rights and privileges, of all the duties, and of all the remedies, which, by the act referred to, were conferred upon, or enjoyed by, the fire department of Mobile. And the extension was accomplished by the reading of the Mobile act, in its application to Montgomery, as if the word Montgomery occurred instead, wherever the word Mobile occurred. This method of expressing the legislative will may not have been formal; and it may be, that it would have been better if there had not been reference to the act

pertaining to Mobile, and the act had in itself declared the rights, benefits and privileges it was intended to confer. The constitution existing at the time of the enactment did not forbid the reference, and it is not for the courts to criticize legislative methods of expressing the legislative will. There was no intent, as is clearly manifested by the proviso of the original act, introduced from an abundance of legislative caution, to affect in any respect, or in any degree, the individuality and integrity of the act pertaining to the city of Mobile—on the contrary the intent was that it should remain of full force.

The argument directed against the validity of the act assumes that it is amendatory or revisory, and shadows out, rather than distinctly asserts the proposition, that this is necessarily its character, because of the reference to the Mobile act. Proceeding on this assumption, the further proposition is, that as the Mobile act is not set out, nor the section or sections amended, it was offensive to the second section of the fourth article of the constitution of 1868, of force at the time of the enactment, which read: "And no law shall be revised or amended unless the new act contain the entire act revised or the section or sections so amended." It may be, that the legislative intent could have been effected by an amendment of the act pertaining to Mobile. Conceding that to be true, there was no compulsion upon the legislature to prefer that mode of expressing its will, rather than an act original in form, complete and intelligible. A limitation similar to that found in the constitution of 1868, was contained in the constitution of 1865, and the unbroken construction of the limitation was, that it was without application to a legislative act, not purporting to be revisory or amendatory, original in form, complete and intelligible.—*Ex Parte Pollard*, 40 Ala. 100; *Tuscaloosa Bridge Co. v. Olmstead*, 41 Ala. 9; *Falconer v. Robinson*, 46 Ala. 340–48. The corresponding provision of the present constitution is materially variant, reading: "And no law shall be revised, amended, or the provisions thereof extended or conferred, by reference to its title only, but so much thereof as is revised, amended, extended, or conferred, shall be re-enacted, and published at length." Constitutional limitations of this character, are prospective, not retrospective in their op-

eration—they refer to future and not to past legislation, undoing statutes enacted in pursuance of the rules of legislative procedure then prescribed.—Cooley Const. Lim., 77. Whether a statute may now be enacted, incorporating the provisions of a pre-existing statute by reference to its title only, we are not required to consider.

The argument misapprehends the real character of the statute. It belongs to a distinctive class of statutes, known or termed as reference statutes, not of infrequent enactment, constitutional limitation not forbidding. Statutes which refer to, and by reference adopted wholly, or partially, pre-existing statutes. In the construction of such statutes, the statute referred to, is treated and considered, as if it were incorporated into, and formed part of that which makes the reference.—*Turney v. Wilton*, 36 Ill. 385; Sedgwick Stat. & Con. Law, 229, n.; Sutherland, Stat. Con., §§ 147, 257; *Knapp v. Brooklyn*, 97 N. Y. 520. The two statutes co-exist as separate and distinct legislative enactments, each having its appointed sphere of action; and the alteration, change, or repeal of the one, does not operate upon or affect the other.—*Sika v. Railway Co.*, 21 Wisc. 370; Sutherland Stat. Con., §§ 147, 257.

The next insistence of appellant, involving the more important question of the case is, that the statute imposes a specific State tax—a tax on the business of fire insurance companies, exercising their privileges and franchises within the designated locality, and is unconstitutional. It is not insisted the statute is within the limitations upon the legislative power of taxation, the constitution prescribes. Of these limitations, it was justly said by SOMERVILLE, J., in *Hare v. Kennerly*, 83 Ala. 612, that "they are not grants of the power to levy taxes, but limitations upon that taxing power, which has always been inherent in the State and vested in the legislative branch of the State government, which is the depository of all authority on the subject." Moreover, it is well settled, that these limitations have relation to the taxation of property only—property which must be assessed according to its value—and not to other subjects of taxation, such as privileges and occupations. *Ex parte City Council*, 64 Ala. 464; *W. U. T. Co. v. Board of Assessment*, 80 Ala. 273; *Elyton Land Co. v. Mayor*, 89

Ala. 477; *Anniston v. Southern Railway Co.*, 112 Ala. 557; *Capital City Water Co. v. Board of Revenue, ante p.* 303. The insistence, then, resolves itself into the inquiry, whether for the uses expressed in the statute, taxation may be employed.

"It is implied in all definitions," it is said in Cooley on Taxation, (2d ed.), 103, "that taxes can be levied for public purposes only. Differences of opinion frequently arise concerning the power to impose taxation in particular cases, but all writers who treat the subject theoretically, and all jurists, agree in the fundamental requirement, that the purpose shall be public, and they differ, when they differ at all, upon the question whether the purpose proposed is within the requirement." As the power is legislative; as without legislative enactment the tax cannot be prescribed or appointed, nor its collection authorized, of necessity, the legislature must in the first instance determine, whether a particular use or purpose, for which a particular tax is imposed, is public—whether it is of such general utility, or so concerns the public interest or public welfare, that it may be aided or accomplished through the medium of taxation. The determination is not conclusive—"the theory of all governments, State and national, is opposed to the deposit of unlimited power anywhere."—*Loan Association v. Topeka*, 20 Wall. 663. Whether the purpose is public, authorizing the exercise of the power, may become a question for the decision of the judiciary, as may become the inquiry whether the uses or purposes for which the power of eminent domain is exerted are public, within the contemplation of the constitution. The presumption is in favor of the correctness of the legislative determination, and it will not be disturbed, unless the presumption is removed, and it is shown clearly the determination is founded in error. "The leading authorities on this point, employ very strong, emphatic expressions."—Cooley on Taxation, (2d ed.), 103 *et seq.*

We have examined the decisions referred to by Judge Cooley, and we may repeat, that they "employ very strong, emphatic expressions," indicative of the gravity and delicacy of the question which becomes judicial, and the hesitation of the courts to nullify legislative action. In one case, (*Shenley v. City of Allegheny*, 25

Penn. St. 128), it is said : · "The exercise of the taxing power by the legislature must become wanton and unjust—be so grossly perverted. as to lose the character of legislative function—before the judiciary will feel themselves entitled to interpose on constitutional ground." In *Broadhead v. Milwaukee*, 19 Wisc. 624, (s. c. 88 Am. Dec. 711), it was said by DIXON, C. J. : "The legislature cannot create a public debt, or levy a tax, or authorize a municipal corporation to do so, in order to raise funds for a mere private purpose. It cannot in the form of a tax take the money of the citizens and give it to an individual, the public interest or welfare being in no way connected with the transactions. The object for which money is raised by taxation must be public, and such as subserve the common interest and well-being of the community required to contribute. To justify the court in arresting the proceedings and declaring the tax void, the absence of all possible public interest in the purposes for which the funds are raised must be clear and palpable—so clear and palpable as to be perceptible by every mind at the first blush. In addition to these, I understand that it is not denied that claims founded in equity and justice, in the largest sense of the term, or in gratitude or charity will support a tax. Such is the language of the authorities." In another very careful and thoughtful opinion it is said : "If there be the least possibility that making the gift will be promotive in any degree of the public welfare, it becomes a question of policy and not of natural justice ; and the determination of the legislature is conclusive."—*Booth v. Town of Woodbury*, 32 Conn. 118.

The general principle upon which courts proceed, in determining the validity of legislation, is of peculiar force in judicial revision of the legislative determination of the purposes for which taxation may be imposed—the · court must be satisfied clearly, that the limitations of the constitution have been infringed, or the legislation must stand and be enforced. The reasons are obvious, and are thus stated by Judge Cooley : "For, in the first place, there is no such thing as drawing a clear and definite line between purposes of a public and those of a private nature. Public and private interests are so commingled, in many cases, that it is difficult to determine which predominates ; and the question whether the

[Phœnix Assur. Co. of London v. Fire Dept. City of Montgomery.]

public interest is so distinct and clear as to justify taxation is often embarrassing to the legislature, and not less so to the judiciary. All attempts to lay down general rules whereby the difficulties may be solved, have seemed, when new and peculiar cases arose, only to add to the embarrassment instead of furnishing the means of extrication from it.''—Cooley on Taxation, (2d ed.), 106.

The purposes for which this tax is imposed are not private or individual—nor is it a stimulus to the performance of a private individual duty, as distinguished from a public duty ; nor are the benefits the public are expected to derive, contingent or incidental. The prevention and suppression of calamities, involving the destruction of property, peril to life, the disturbance of public security, is a governmental function and duty, aid and assistance in which it is the duty of every citizen to render. Sacred as are the rights of private property, jealous as is the law of every infringment or invasion of them, emergencies or occasions may arise in which they are subordinate and must yield to public necessity. *Salus populi suprema lex*, is a maxim founded on the "implied assent on the part of every member of society, that his own individual welfare shall, in cases of necessity, yield to that of the community, and that his property, liberty, and life shall, under certain circumstances, be placed in jeopardy, or even sacrificed for the public good.''—Broom's Legal Maxim, 1. It is upon this maxim and the principle it embodies, when the danger is pressing and imminent, that public officers or private citizens, may, without incurring liability, to prevent the spread of an existing conflagration, enter upon the premises of a citizen, raze or demolish houses, or other structures, as they may destroy or use any property to obstruct or prevent the advance of a hostile army. In such an event, there is no duty or obligation resting upon the government, or any of its agencies to make compensation for the property injured or destroyed —compensation is matter of grace and not of right. 2 Dillon Mun. Corp., § 955, *et seq.* ; Cooley Const. Lim., (6th ed.), 739 ; 2 Kent. 338 ; *Russell v. Mayor*, 2 Denio, 461 ; *Bowditch v. Boston*, 101 U. S. 16 ; *U. S. v. Pacific Railroad*, 120 U. S. 227. In *Russell v. Mayor*, *supra*, it was said : ''The best elementary writers lay down the

principle, and adjudications upon adjudications have for centuries sustained, sanctioned and upheld it, that in a case of actual necessity, to prevent the spreading of fire, the ravages of a pestilence, or any other great public calamity, the private property of any individual may be lawfully destroyed for the relief, protection or safety of the many, without subjecting the actors to personal responsibility for the damages which the owner has sustained.''

The duty of aiding and assisting in the prevention or suppression of conflagrations, resting upon every citizen having the physical ability for its performance, the freedom from all liability, if the necessity is actual, or reasonably apparent, is of the same grade and character with that of the rendition of military service. It is a common duty, and if a few in a community voluntarily assume it, it is not because its obligation rests upon them specially, but because they are more willing to encounter its dangers, to endure its hardships, and bear its labors and burdens. Experience has shown that the duty is better performed, the danger of conflagration lessened, suppression of them more readily accomplished, and the general security promoted, when the duty is specially committed to organized companies, or associations of citizens ; and they exist in all well regulated towns and cities. The character of the duty, thus committed to a few, who voluntarily assume it, is not changed—it is not private, but public—though to its performance, it may be, the members of such companies or associations can be compelled. The company, or association, may derive existence and organization from municipal authority only, or from special legislative enactment. Whether existence and organization be derived from the one authority, or the other, the duty is identical, and the members of the companies are not servants, agents, or officers of the State or of the municipal corporations. They are public servants or agents, appointed to the performance of a public duty ; and in the absence of a statute providing otherwise, for their conduct, or their torts, if any they should commit, there is no liability resting on the municipal corporation ; nor is there liability upon the State, which is never liable for the misfeasances or malfeasances of its ministerial

agents, or officers.—2 Dillon Mun. Corp., § 794, et seq. ;
7 Am. & Eng. Encyc. of Law, 997, and notes.

Similar statutes exist in several of the States, and the
precedent for them is probably found in the legislation
of New York, the history of which was traced in *Trus-
tees of Exempt Firemen's Fund v. Roome*, 93 N. Y. 313 ;
and the validity of the legislation has been sustained
since an early day after its original enactment.—*Fire
Department v. Noble*, 3 E. D. Smith, 440. A similar
statute exists in Illinois, and in Wisconsin, the validity
of which was sustained in *Firemen's Benevolent Associa-
tion v. Lounsbury*, 21 Ill. 511, (s. c. 74 Am. Dec. 115) ; *Fire
Department of Milwaukee v. Helfenstein*, 16 Wis. 136. In
*State v. Merchants Ins. Co.*, 12 La. Ann. 862 ; *Philadelphia
Association v. Wood*, 39 Penn. St. 73 ; *San Francisco v.
Ins. Co.*, 74 Cal. 113 ; *Henderson v. London & Lancashire
Co.*, 135 Ind. 23 (s. c. 20 L. R. A. 827), similar statutes
were pronounced unconstitutional. These decisions
have been examined with much care—they are con-
trolled by constitutional limitations not found in our
present constitution, nor any of its predecessors ; and in
some of them are indications of theories of the extent of
legislative power and of the duty of courts in judicial
revision of its exercise. we are not at liberty, if we had
the inclination, to recognize and adopt.

The theory which has prevailed, since our earliest
history as a State, is, that the constitution is an instru-
ment of limitation and restraint upon power already
plenary, so far as it respects the functions of govern-
ment and the objects of legislation ; that the grant to
the General Assembly of legislative power, is a grant of
all legislative power residing in the people as a sovereign
community, subject only to such limitations and quali-
fications as may be expressed in the constitution, or in
the federal constitution ; that courts are without power
to set aside or annul legislative enactments, because it
may be supposed they conflict with natural right, sound
morality, or abstract justice ; that to justify a judicial
sentence of nullity, it must be clearly apparent that the
enactment is violative of some provision of the constitu-
tion, State or federal, or that it is an exercise of au-
thority not legislative in its nature.—1 Brick. Dig., 369,
§§ 6-8 ; *Gunter v. Dale County*, 44 Ala. 639 ; *Davis v. State*,
68 Ala. 58 ; *Mangan v. State*, 76 Ala. 60 ; *Moog v. Ran-
dolph*, 77 Ala. 597.

The constitution enumerates, with much of care, and read in the light of former constitutions, it may be said, particularly and specially in reference to the exercise of the sovereign power of taxation, the things which the General Assembly may not do; and to borrow the expressive language of Chief Justice BLACK, in the great and leading case upon this subject of *Sharpless v. Mayor*, 21 Penn. St. 147, (s. c. 59 Am. Dec. 759) : "If we extend that list, we alter the instrument, we become ourselves the aggressors, and violate both the letter and spirit of the organic law as grossly as the legislature possibly could. If we can add to the reserved rights of the people, we can take them away; if we can amend, we can mar; if we can remove the landmarks which we find established, we can obliterate them; if we can change the constitution in any particular, there is nothing but our own will to prevent us from demolishing it entirely."

The tax is imposed on all fire insurance companies, whether foreign or domestic, and in this respect, is unlike the New York, Illinois, and Wisconsin statutes, which were limited to foreign companies. The appellee, is a foreign, not a domestic company, and as to it, the statute may be regarded, as it was regarded by the New York and Wisconsin courts, as prescribing a condition upon which lawfully, it could do business within the designated locality. It is more in accordance with our constitution, and our theories of constitutional construction, to regard it, as it was intended by the legislature, as a tax, and not as a police regulation; and as such it was regarded by the supreme court of Illinois, in *Firemen's Benevolent Asso. v. Lounsbury*, *supra*. It is not infrequent, that statutes have for their objects the raising of revenue and the police of the State, and blending them is not offensive to the constitution.—*Battle v. Corporation of Mobile*, 9 Ala. 234; *Youngblood v. Sexton*, 32 Mich. 406, (s. c. 20 Am. Rep. 654).

There is no force in the suggestion that the tax is not uniform and is wanting in equality. It is not an imperative requirement of the constitution that taxes, other than taxes upon property, shall be uniform or equal. This tax is imposed on all fire insurance companies, doing business in the designated locality, and has in it every element of uniformity and equality which is requisite to

[Phœnix Assur. Co. of London v. Fire Dept. City of Montgomery.]

support a specific tax on privileges or occupations. In *West. Un. Tel. Co. v. State Board,* 80 Ala. 280, it was said by CLOPTON, J.: "The rule of uniformity does not require that all subjects be taxed, nor taxed alike. The requirement is complied with, when the tax is levied equally and uniformly on all subjects of the same class and kind. It extends to the class upon which the tax shall operate. Different occupations may be taxed at different rates, and some may be altogether exempted; and the requirement of uniformity is not infringed, if the various classifications include all occupations similarly circumstanced and of the same kind."

Nor can we perceive the force of the objection that the "Fire Department Association" is made the recipient of the tax, and charged with the duty of its disbursement, or rather, administration. "The right to tax," said BLACK, C. J., in *Sharpless v. Mayor, supra,* "depends on the ultimate use, purpose and object for which the fund is raised, and not on the nature or character of the person or corporation whose intermediate agency is to be used in applying it. A tax for a private purpose is unconstitutional, though it pass through the hands of public officers; and the people may be taxed for a public work, although it is under the direction of an individual or private corporation." The recipient of a tax is not material in the consideration and determination of its validity or character. All public moneys are destined eventually to individual use and benefit, though raised for the payment of the public debt, for the maintenance of government, or for other governmental expenditures. It is the purpose for which the money is raised, that supports a tax, and it is within legislative discretion to intrust the collection and disbursement to public officers, or to private individuals or corporations.

In conclusion, we cannot single out any clause or section of the constitution the statute offends—we cannot say that it was not an exercise of legislative power; and neither being clearly apparent, the duty of the courts is to enforce it according to the legislative will and intent. If, as is complained, the tax is onerous—if as compared with the taxation of the business of other corporations, there is inequality—these considerations belong to the legislative department, and its determination is conclusive upon the judiciary.

We find no error in the rulings of the circuit court, and the judgment must be affirmed.
Affirmed.