## AIRY v. THE PEOPLE.

1. CONSTITUTIONAL LAW—TITLE OF ACT.

An Act entitled " An Act to Provide for the Payment of Salaries to Certain Officers, to Provide for the Disposition of Certain Fees, and to Repeal All Acts Inconsistent Therewith," which provides for the payment of salaries and the disposition of fees, is not obnoxious to the constitutional requirement that no bill, except the general appropriation bill, shall be passed containing more than one subject, which shall be clearly expressed in its title.

2. CONSTITUTIONAL LAW—CONSTRUCTION.

The word " law," as used in sec. 15, art. 14, of the constitution, is not synonymous with " act." It means law in its general sense,—whatever has been enacted by the legislature, whether it is embodied in one act or in any number of acts.

3. SAME.

There is no requirement in sec. 15 of art. 14 of the constitution which compels the legislature to make the salaries of the officers in counties of any particular class different from, greater or less than, the salaries of officers in any other class.

4. SAME.

The fact that many provisions contained in a bill as introduced in and passed by the house were omitted from the bill as passed by the senate and concurred in by the house, does not show that the bill was so altered or amended on its passage through either house as to change its original purpose, within the meaning of the inhibition contained in the constitution.

5. SAME.

Only the person whose rights are affected, and who has some right to and interest in the defeat of an act, can raise a question as to its constitutionality.

6. SAME.

The salary act of 1891, in so far as it requires the officer to pay into the county treasury any part of the fees collected by him other than that specified as in excess of the amount of his salary, is unconstitutional.

7. CRIMINAL LAW—STATUTORY CONSTRUCTION.

A conviction cannot be sustained for a failure to make a report as required by statute where no penalty was provided, and such failure was not made a crime or misdemeanor.

*Error to the County Court of La Plata County.*

PRIOR to the year 1891, in this state the only compensation given to county and precinct officers, with the exception of county assessors, was the fees prescribed by the legislature and collected by such officers in the discharge of their official duties. In response to a general demand of the people for the substitution of the salary for the fee system, and for a reduction of the fees to be collected by such officers, the eighth general assembly passed two acts, one relating to fees, the other to salaries. The salary act is the one in question here, but the nature of the objections urged against it is such that both must necessarily be considered in this opinion in order to make clear our position. The titles of these acts being material to the discussion which will follow, are given here in full. That of the former is " An Act Concerning Fees, Providing Penalties for Violation of This Act, and to Repeal All Acts and Parts of Acts in Conflict With the Same." Session Laws 1891, p. 200. That of the latter is " An Act to Provide for the Payment of Salaries to Certain Officers, to Provide for the Disposition of Certain Fees, and to Repeal All Acts Inconsistent Therewith." Session Laws 1891, p. 307.

By the former act, all the counties of the state were divided into five classes, according to population as ascertained by the federal census of the year 1890. The fees prescribed

under each class are different from the fees under any of the others, and a material reduction in the amount of charges was made from that which theretofore prevailed. By the latter act, salaries were provided for district attorneys and for county and precinct officers named therein. Sections 4, 5, 6, and 19 to 25 thereof relate more particularly to the subject of fees than to that of salaries. Section 20 provides that the officers named therein, while receiving salaries, shall make to the chairman of the board of county commissioners a report in writing, under oath, on the first Monday of each month, of all the fees, commissions and emoluments of their office, of every name and description whatsoever, and of all necessary expenses of clerk hire and other expenses, for the month ending at the time of said report. Section 22 provides that the fees collected by the county officers shall be paid over to the county treasurer and shall be kept by him in separate funds, and the salaries fixed by the act shall be paid out of said funds, and no others, upon warrant drawn upon the county treasurer to the credit of the officer entitled thereto. Section 24 provides a penalty for the failure of an officer to pay over to the county treasurer the fees so collected.

The plaintiff in error in this case was elected county clerk and recorder of La Plata county in 1893, and entered upon the discharge of his duties as such in January, 1894. Up to the 7th day of May, 1894, he had collected as fees of his office $1,200. At no time did he make any report, as provided by section 20; nor did he pay over to the treasurer of the county any of the fees charged and collected by him, as provided for by section 22. For failure to comply with the two sections, the district attorney filed against the plaintiff in error an information containing two counts, the first of which charged him with the violation of section 20, in that he failed to make the report therein provided for; the second count charged him with the violation of section 22, in that he failed to pay over to the county treasurer the fees of his office theretofore collected by him.

A demurrer to the indictment was overruled by the court,

and upon trial the defendant was convicted under both counts, and sentenced under each to confinement in the county jail for fifteen days.

Messrs. RUSSELL & RITTER, Mr. J. C. HELM and Mr. H. B. O'REILLY, for plaintiff in error.

THE ATTORNEY GENERAL, Mr. H. T. SALE, Mr. F. P. SECOR, Messrs. GALBREATH & SEARCY and Mr. A. CORNFORTH, for the People.

MR. JUSTICE CAMPBELL delivered the opinion of the court.

The defendant comes here from that sentence by writ of error, his assignments of error containing numerous specifications. He is represented here by different counsel; and while they all argue that the salary act is unconstitutional, they do not.altogether agree as to what provisions of the constitution are violated, nor are they in harmony as to the reasons therefor.

It is urged by one counsel that the act is in conflict with section 15 of article 14 of the constitution, (1) in that the principle of classification laid down therein was not observed; (2) because all provisions for fees and salaries must be included in one act, and this is not complied with in the act in question. By another counsel it is contended that the act violates the same principle of classification, and that, as it contains provisions for salaries and disposition of fees, it is in violation of section 21 of article 5 of the constitution, in that not only the body of the act, but the title, contains more than one general subject. All of defendant's counsel contend that on its passage through the senate the title of the bill and the bill itself were so amended as to change the original purpose of the bill as it was introduced in the house.

The three sections of the constitution, therefore, to which our attention has been called, and the determination of which must decide this case, are, *first*, section 21 of article 5; *second*,

section 15 of article 14 ; and, *third*, section 17 of article 5; and they will be considered in the order named. The substance of section 21 is that no bill shall contain more than one subject, which shall be clearly expressed in its title. ˙Section 15 is as follows :

" For the purpose of providing for and regulating the compensation of county and precinct officers the general assembly shall by law classify the several counties of the state according to population, and shall grade and fix the compensation ˙of the officers within the respective classes according to the population thereof. Such law shall establish scales of fees to be charged and collected by such of the county and precinct officers as may be designated therein for services to be performed by them respectively ; and where salaries are provided, the same shall be payable only out of the fees actually collected in all cases where fees are prescribed. All fees, perquisites and emoluments above the amount of such salaries shall be paid into the county treasury."

Section 17 is that no bill shall be so altered or amended on its passage through either house as to change its original purpose.

Let us consider the first objection in the light both of reason and authority. We concede that when the legislature elected to treat of fees and salaries in two separate acts, it would be more consistent with its purpose, more logical in method, and more scientific in arrangement, to observe this distinction throughout in both acts, and in these particulars to maintain the order into which the general subject thus naturally divides itself. But, desirable as it is to preserve an orderly arrangement and a scientific method in our statute law, yet if, in the enactment of laws, no provision of the constitution is violated by the legislature in selecting methods which flagrantly violate the sense of mathematical accuracy and scientific classification, this court must relegate to the legislature the determination of such questions, and uphold the constitutionality of such enactments.

What, then, is the general subject of which the legislature

under this salary act has treated?   It is clearly the compensation of the public officers named therein.   In providing for the compensation of public officers, it is competent for the legislature not only to provide for their salaries, but also to provide the means whereby such salaries may be paid.   Fees and salaries, therefore, are clearly but branches or subdivisions of the general subject of the compensation of public officers. An act entitled "An Act to Provide for the Compensation of Public Officers" would certainly be broad enough and specific enough to embrace not only provisions for the amount of fees which they might collect and disburse, but also provide salaries for their services to be paid out of the fees collected.

If this act had read "An Act to Provide for the Compensation of Certain Officers, to Fix Their Fees, and Prescribe Their Salaries," we think that only one general subject would be embraced therein, and that is the compensation of public officers, and the first clause of the title would include the other two.

The title of this act is one that relates to the payment of salaries and the disposition of fees.   It is a fact of which we are bound to take judicial notice that before this act was passed there was upon the statute books legislation which authorized officers to collect fees for certain services which, in their official capacities, they performed.   The title of this act, as it was passed, provides for the payment of salaries and the disposition of fees.   But we think that the act itself might properly have embraced provisions regulating the disposition of fees to be collected by such officers, even though the title itself had not contained the latter clause.

We can see no objection, therefore, to one act containing provisions not only for the payment of salaries, but provisions, also, for the disposition of fees out of which such salary shall be paid; nor can we see any objection to including in the title references to fees as well as to salaries.

By way of illustration, take our municipal corporation act, which is entitled "An Act in Relation to Municipal Corporations."   Under this general title are various articles and

subdivisions of the main subject, such as specifying the powers of the corporation, the mode of incorporation, the method for the dissolution of the corporation, and the subdivisions specifying the manner in which ordinances shall be passed. It is true the title of that act is much broader than the title of this salary act; but, for example, suppose that the legislature desired in one act to provide only for the mode of incorporation of a municipality, to specify its general powers and duties, and the manner of its dissolution. Could it not do so without at the same time providing for the various other matters and things which directly pertain to, and are connected with, and naturally germane to, the general subject of municipal corporations? If it could so treat of these three branches or subdivisions of the main or general subject, it would necessarily follow that it might do so under an act entitled "An Act to Provide for the Mode of Incorporation, to Specify the Powers and Duties, and to Provide for the Method of Dissolution of Municipal Corporations." Here would be three branches or subdivisions of the general subject of municipal corporations embraced in one title and legislated about in one act, but we think, without question, that only one general subject is embraced in the title and included in the act.

So in the act before us, while the general subject is the compensation of public officers, two subdivisions or branches of that subject, naturally connected and germane each to the other, and both to the general subject, are expressed and embraced in the title to this act and included in the act itself.

We are, however, not without authority directly in point in some cases, and clearly analogous and substantially the same in principle in others. In *State v. McCann*, 4 Lea (Tenn.), 1, the supreme court passed upon an act entitled "An Act to Regulate and Equalize the Salaries of Certain Public Officers." It provided that certain officers, which the act itself named, shall thereafter receive as compensation for their services certain salaries. Theretofore they had collected certain fees for the performance of their duties and retained

them as compensation for their services.  The act provided further that the fees which were collected by such officers should be reported, if by state officers, to the state comptroller, if by county officers, to the county judge; and further required such officers to pay over to the comptroller or county trustee any amount in excess of the salary fixed by the act.

In Tennessee there is a constitutional provision like section 21 of article 5 of our constitution.  This act, it is true, was held unconstitutional by the supreme court of Tennessee upon other grounds; but upon the question we are considering here, the court says that in the act, whose general subject is the equalizing of salaries, both the subordinate subjects of fees and salaries may properly be embraced, holding that the act did not contain two subjects, but only two branches or subdivisions germane to, and naturally connected with, the main subject.

In *Gunter v. Dale County*, 44 Ala. 639, it was held that an "Act to Suppress Murder, Lynching, and Assaults and Batteries" was not obnoxious to an article of the constitution which is like our section 21.  Of this law the court says: "It contains but one subject, though it deals with several branches of that subject, but they are all attingent and cognate to one subject-matter,—the suppression of certain offenses."

A case, however, in this particular directly in point is *Henderson v. State*, 36 N. E. Rep. (Ind.) 257.  The act there under consideration was entitled "An Act Fixing the Compensation and Prescribing the Duties of Certain State and County Officers, and Providing Penalties for the Violation of its Provisions."  In considering this act, which provided for the fixing of salaries of state, county and judicial officers, prescribing their duties, and the fees to be taxed for services performed by them, it was held by the supreme court of Indiana that it does not violate a section of the Indiana constitution which provides that "every act shall embrace but one subject, and matters properly connected therewith,

which subject shall be included in the title." This is a very instructive case, and although there was a dissenting opinion by one of the judges, we think that the opinion of the court is a complete and satisfactory answer to the objection urged here to the unconstitutionality of our salary act.

It will be observed that the title of the Indiana act was to fix the salaries of certain officers, but contained no reference to fees; and yet the court held that the fees to be collected by such officers might be included in the act, although not specifically mentioned in the title. So with this salary act. The clause thereof " to provide for the disposition of certain fees" might be omitted from the title, and certainly the title. of the act would then contain but one subject, viz. salaries; still the act might, under the decision in the *Henderson Case*, *supra*, and as we think without question, properly contain provisions for a disposition of the fees collected by such officers, providing that they should make a report of such fees to any designated county or state officer, and requiring such fees (certainly in excess of the amount of their salaries) to be paid into the county treasury. *In re Breene*, 14 Colo. 401, in effect sustains the validity of this act. For other authorities, see Cooley on Constitutional Limitation (6th ed.), 173, and cases cited.

The supreme court of Indiana, in the subsequent case of *State ex rel. v. Boice*, 39 N. E. Rep. 64, held certain sections of this act unconstitutional, but not for the reason here urged. It was because of an improper classification of the counties, which objection, also urged here, we now proceed to consider.

· As to the second objection, it is argued that under section 15, because of the use of the word "law," the legislature must fix the fees of county and precinct officers and provide for their salaries in one act; and that when the legislature presumed to pass one act for the fixing of fees and another act providing for the salaries of the officers to be paid out of such fees, it violated the rule prescribed by this section of the constitution.

In the first place, it may be said that the unconstitutionality of one act in no sense can depend upon the unconstitutionality of another act of the legislature. In the second place, the word "law," as used in this section, is not synonymous with "act." The "law" means here law in a general sense,—whatever has been enacted by the legislature, whether it is embodied in one act or in any number of acts; and so far as the use of the term "law" in this section is concerned, it cannot be construed as compelling the legislature to embody in one act provisions for fees and salaries.

It may also be said that the classification provided for in section 15 may, or may not, be applicable to both fees and salaries. The legislature of Indiana, in carrying out the provisions of a somewhat similar section of its constitution, made a classification of counties in accordance therewith for the purpose of providing salaries; but for the purpose of fixing fees there was no such classification made, the fees in each being the same as the fees prescribed in every other county in the state. But our section certainly applies to the classifying of counties as to fees, and, for the purposes of this case, we will assume that counties are also to be classified for the purpose of providing salaries. But there is nothing in the section which makes it imperative upon the legislature to make the same classification of counties for both purposes. In other words, the classification of the counties for the purpose of fixing fees may be made and based upon the population ascertained by one method, and the classification of the same counties for salaries upon another or different basis.

In the fee act the legislature expressly says that the classification of the counties is made upon the basis of the population ascertained by the federal census of 1890. In the salary act the classification of the counties for the purpose of providing salaries is based upon population, but it is not asserted that the population was ascertained by the federal census.

Possibly, in a case of this sort, if there was a clear, palpable, and flagrant classification of counties made not accord-

ing to population, but clearly in violation of this principle, the court might say that the legislature had made an improper ascertainment, and therefore substitute for its determination the determination of this court.

We are cited in this connection, among others, to the case of *State v. Boice, supra,* which held unconstitutional an act of the legislature which, *inter alia,* purported to classify counties according to population for the purpose of providing salaries for the county treasurers of all the counties in the state. The act thus attempting to make the classification omitted Shelby county, and the court held that by doing so the law became in effect a special or local law, and was prohibited by that section of the constitution which forbids the passing of a special or local law when a general law can be made applicable.

From this it is argued here that inasmuch as the classification of counties under the salary act is not in accordance with the classification under the fee act,—which latter was admittedly made upon the basis of population as shown by the federal census of 1890,—and is irregular and unjust in that, in one particular at least, a certain county is placed in the fourth class, whereas it should be placed in the third class, because it contains a larger population than some of the counties assigned in the third class, and by the federal census was larger in population than the other counties which were placed in the fourth class, that this classification is the same as no classification at all, or the same as if the legislature had omitted therefrom one or more counties of the state.

We do not concede the soundness of this argument. As was said by the supreme court of Indiana: " We know judicially that the population of the omitted county (here, the county alleged to be improperly classified) entitled it to be classified among the counties whose treasurers were given compensation by the act, yet we do not intimate that we could know, or that we have authority to determine, to the exclusion of the legislative decision, as to what class said county

should have been assigned, or what the compensation should have been." There is no requirement in section 15 of article 14 which compels the legislature to make the salaries of officers in counties of any particular class different from, greater or less than, the salaries of officers in any other class. For aught that the constitution provides, the legislature might, for example, give to a treasurer in counties of the second class the same salary that is given to a treasurer in counties of the first class; or to a county clerk or sheriff in counties of the fourth class the same compensation that such officer is given in counties of the second class.

This being so, there could be no injury to an officer of such alleged misclassed county, and the irregularity complained of being of such comparatively trifling importance, and it being doubtful if the court could substitute for, and make its decision superior to, the legislative decision of this primarily legislative question, we hold that the classification of the counties under the salary act does not violate the provision of the constitution under which it purported to be made. *Longan v. County of Solano*, 65 Cal. 122.

The third objection is that this act is obnoxious to section 17 of article 5 in that the original purpose of the act as it was introduced into the house was changed on its passage in the senate. This contention is based upon the fact that many of the provisions in relation to fees as contained in the bill as introduced in and passed by the house were omitted from the bill as passed in the senate and concurred in by the house. The principle of this decision wherein it is held that the bill is not obnoxious to section 21 of article 5 sufficiently answers this objection, and in no sense can it be held that the original purpose of the act when introduced as a bill was changed on its becoming an act.

There are a number of other objections urged against the constitutionality of this act; but upon the principle that only the one whose rights are affected by the determination of these questions, and who has some right to, and interest in, the defeat of the act, can raise them, we do not at this time

consider them, nor do we intimate one way or the other what will be the decision of this court when such questions are properly raised in proper proceedings and by proper parties.

There remains one question to be considered; and that is whether or not the plaintiff in error, as county clerk, was obliged to pay into the county treasury the total amount of the fees collected by him before he ascertained whether the amount so collected would be in excess of his salary as fixed by law. Section 15 of article 14 provides that where salaries are provided the same shall be payable only out of the fees actually collected in all cases where fees are prescribed, and all fees, perquisites, and emoluments *above such salary* shall be paid into the county treasury.

La Plata county, under the salary act, is placed in the fourth class. The annual salary of plaintiff in error was fixed by the act at $1,800. When the information was filed, the clerk had collected, according to the charge, only $1,200. At that time there were no fees in his hands, nor had he collected fees equal to the amount of his salary; therefore there was no excess or surplus of fees above his salary to be turned over to the county treasurer. We hold that under this constitutional provision the officers named are not obliged to pay over to the county treasurer any of the fees collected by them until after the amount of such fees equals the amount of salary fixed by the act;—in other words, that it is only the excess or surplus of fees above salaries which by the constitution and this act belongs to the county, and which only the legislature can compel the officers thus to turn over and pay into the treasury.

Such being the case, at the time this information was filed there was no ascertainment, or, rather, there was an ascertainment that the amount of the fees collected was less than the salary fixed, and the clerk had a right to retain them. This does not, however, render nugatory those provisions of the act which require the officer to make a report and keep an account of the fees collected, to enable the county commissioners to determine what amount of fees has been col-

lected and when the salary has thereby been paid, so that thereafter any fees collected properly should be turned over into the treasury.

We think it an insufficient answer to say that the act of the legislature provides that all fees shall be turned over into the treasury, and that the salary of the officer shall be paid out of such fund thereby created, by warrants drawn upon the treasurer, and thereby the same results are reached as if the officer paid himself out of his own fees, because the constitution has expressly provided what amount of the salary shall be thus turned over. By necessary implication, it follows that the fees collected belong to and are the property of the officer until the amount thereof equals his salary, and that the legislature cannot require the officer to pay into the county treasury any part of the fees collected other than that specified as in excess of the amount of his salary.

Under this holding, the defendant was improperly convicted upon the first count of the information. With respect to the second count, which charges the violation of section 20 of this act, which requires the officer to make a report, it is sufficient to say that no penalty has been provided for the violation of said section, and as the act does not make such failure to report a crime or misdemeanor, the conviction of the defendant thereunder was unwarranted.

The judgment and sentence of the court should be reversed, and the cause remanded with instructions to dismiss the information.

*Reversed.*