The PEOPLE of the State of Colorado,
Plaintiff-Appellant,

v.

Steven BOYD and Eric Winkeller,
Defendants-Appellees.

No. 80SA267.

Supreme Court of Colorado,
En Banc.

Feb. 8, 1982.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., William Morris, Laura E. Udis, Asst. Attys. Gen., Denver, for plaintiff-appellant.

Fredric B. Butler, Vail, for defendants-appellees.

DUBOFSKY, Justice.

The People appeal an order of the Eagle County District Court dismissing the county court convictions of the defendants Steven Boyd and Eric Winkeller.[1]  The district

---

1.  The People appealed the dismissal under section 16–12–102, C.R.S.1973, which mandates that the district attorney appeal a decision adjudging a statutory provision unconstitutional; under section 13–4–102(1)(b), C.R.S.1973, appeal of a constitutional question is to this Court.

court ruled that section 33–31–114, C.R.S. 1973 could not serve as a constitutional basis for criminal prosecution of the defendants. We affirm the ruling of the district court.

On June 17, 1979, after several accidents involving individuals riding in inner tubes or rafts on the Eagle River near Avon, one of which resulted in two deaths, the sheriff of Eagle County closed the river to anyone using tubes, rafts, or kayaks. The sheriff's order was based on section 33–31–114, C.R.S.1973, which provides:

"*Authority to Close Waters.* Any person having the authority to enforce the provisions of this article has the authority to order the occupants of any vessel to wear a life jacket, life belt, or a similar safety device or to order any vessel removed from or to prohibit boating on any waters of this state when, in the opinion of such person, the condition of the water, weather, or the vessel constitutes a hazard to human life and safety."

The sheriff's order was publicized on local radio stations and in local newspapers. It remained in effect until June 30, 1979.

About 7:30 p. m. on June 27, 1979, a Minturn police officer saw two kayakers heading downstream on the Eagle River as it passes through Minturn. Using the public address system in his police car, the officer told the kayakers to get off the river. One of them, the defendant Boyd, paddled to the river bank and told the officer that the sheriff had no right to close the river to kayakers. At trial, Boyd and the other kayaker, the defendant Winkeller, testified that in their opinions the river conditions were perfect for whitewater kayaking. After Boyd's discussion with the officer, the two kayakers continued downstream for another mile and a half to Dowd Junction where they removed their kayaks from the river.

The officer had followed them from Minturn and when they removed their kayaks, he requested that they wait for a deputy sheriff to arrive. The deputy sheriff issued a summons and complaint to each defendant, charging them with violating section 33–6–127(2), C.R.S.1973 which provides:

"Any person convicted of violating any provision of this title [Title 33, Wildlife and Parks and Outdoor Recreation] or any rule or regulation made or adopted under this title for which another penalty is not provided, shall be punished by a fine of not less than twenty-five dollars nor more than three hundred dollars, or by imprisonment in the county jail for not less than ten days nor more than ninety days, or by both such fine and imprisonment."

The next day, the deputy sheriff re-issued the summonses for "kayaking on closed water," this time relying on section 33–31–114. After trial to the court on September 19, 1979, the county court convicted both defendants of violating section 33–31–114 and fined them each $25.00.

■ On appeal, the district court reversed the defendants' convictions and dismissed the charges on the ground that if section 33–31–114 was meant to be used as a basis for criminal prosecution, it was unconstitutionally vague. We conclude that the statute gives enforcement officials the authority to close a river to boating when the condition of the water constitutes a hazard to human life and safety. However, we also conclude that section 33–31–114 cannot be applied constitutionally to convict the defendants here because the statute contains no express provision making it unlawful to disobey an order closing a body of water. Therefore, we affirm the district court's dismissal of the charges against the defendants.

■ The defendants argue that the statute does not clearly apprise affected persons that it is unlawful to disobey an order closing the river. We agree. Due process and fundamental fairness require that a statute give a person of ordinary intelligence fair notice that his contemplated conduct is unlawful. *U.S.Const.* amend. XIV; *Colo.Const.* art. II, sec. 25; *United States v. Batchelder*, 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979); *People v. Beruman*, Colo., 638 P.2d 789 (1982); *People in the Interest of C. M.*, Colo., 630 P.2d 593 (1981); *Holcomb v. City and County of*

*Denver*, 199 Colo. 251, 606 P.2d 858 (1980). The fact that a statute empowers authorities to forbid certain acts does not necessarily make those acts punishable by penal sanctions. For such sanctions to apply, an act must first be denominated a crime. A crime "is any social harm defined *and made punishable* by law." [2] (Emphasis added.) *Perkins on Criminal Law*, p. 9 (1969). Our system of criminal law "does not permit a conviction for what was not clearly recognized as a crime at the time it was done." *Id.* at 4. Only the General Assembly may declare an act to be a crime. *Casey v. People*, 139 Colo. 89, 336 P.2d 308 (1959). *See People v. Arellano*, 185 Colo. 280, 524 P.2d 305 (1974). The judiciary does not have the power to add language to a statute which will make a criminal offense where one does not otherwise appear. *Pierce v. United States*, 314 U.S. 306, 311, 62 S.Ct. 237, 239, 86 L.Ed. 226 (1941); *Cokley v. People*, 168 Colo. 280, 450 P.2d 1013, 1015 (1969).

■ No relevant statutory provision makes punishable as a crime a person's disobedience of an order closing a body of water under section 33–31–114. In the absence of such an express penal provision, the statute cannot be the basis for criminal prosecution of these defendants. The absence of such a prohibitory provision is in marked contrast to other portions of Article 31, Title 33, the article concerning regulation of boating. For example, section 33–31–103, C.R.S.1973 (1981 Supp.) provides that "[i]t is unlawful for any person to operate or use a vessel on the waters of this state unless such vessel has been numbered . . . ." Section 33–31–105, C.R.S.1973 lists boat safety equipment requirements, and subsection 33–31–105(18) provides that "[n]o person shall operate or give permission for the operation of a vessel which is not equipped as required by this section." Section 33–31–107, C.R.S.1973 (1981 Supp.), entitled "Prohibited operation," contains several express prohibitions. Subsection (1) provides: "No person shall operate or give permission for the operation of a vessel: . . . (c) In a careless manner so as to endanger any person, property, or wildlife." Subsection (2) provides: "No person shall operate a vessel . . . while under the influence of alcohol, a controlled substance, . . . any other drug which renders him incapable of safely operating a vessel, or any combination thereof. . . ." [3] By contrast, neither section 33–31–114 nor any other section in the article contains prohibitory language of any kind to the effect that it is unlawful for a person to violate an order closing waters, prohibiting boating, or requiring a boat to be removed from the water.[4]

A comparison with the "chain law" provisions in section 42–4–410(5), C.R.S.1973 is instructive. The "chain law" provides in relevant part:

"The state department of highways shall also have authority to close any portion of a state highway to public travel or to prohibit the use thereof unless motor vehicles using same are equipped with tire chains or snow tires . . . during storms or when other dangerous driving conditions exist. . . . Such prohibition or restriction

---

2. In addition to a statement that an act is punishable, penal statutes must also clearly indicate the punishment applicable to a particular violation. *United States v. Evans*, 333 U.S. 483, 68 S.Ct. 634, 92 L.Ed. 823 (1948); *Airy v. People*, 21 Colo. 144, 40 P. 362 (1895); *State v. Ching*, 619 P.2d 93 (Haw.1980). *See Olinyk, et al. v. People*, Colo. 642 P.2d 490 (1982).

3. Section 33–6–127, C.R.S.1973 (1981 Supp.), entitled "Penalties and penalty assessments," provides specific penalties applicable to violations of these provisions. Section 33–6–127(12)(nn) provides: "Operating a vessel without required safety equipment—twenty-five dollars." Section 33–6–127(12)(qqq) provides: "Careless operation of a . . . vessel . . .

—ten dollars." No penalty is provided for violation of an order closing waters.

4. The General Assembly has added section 33–31–115, C.R.S.1973 (1981 Supp.) to Article 31. It provides: "Any person who violates any provision of this article is guilty of a misdemeanor and, upon conviction thereof, shall be punished as provided in section 33–6–127." The provision became effective January 1, 1980, after this case arose; therefore, we do not decide whether section 33–31–115 would allow criminal prosecution under section 33–31–114 of persons in the defendants' situation.

of use shall be effective when signs giving notice thereof are erected upon such portion of said highway, and *it shall be unlawful to proceed in violation of such notice."*

(Emphasis added.)

The situation before us is analogous to that in *People v. Home Insurance Company,* 197 Colo. 260, 591 P.2d 1036 (1979). There we ruled that, although the General Assembly had enacted a number of statutory provisions providing for the confidentiality of the contents of medical records, it did not choose to apply criminal sanctions to the invasion of the confidentiality of medical information. Therefore, despite the confidentiality of medical information, its taking could not be prosecuted as theft under section 18–4–401(1)(a), C.R.S.1973 (1978 Repl. Vol. 8).

In order to promote safety and preserve human life, the General Assembly chose in section 33–31–114 to give a county sheriff, among others, the authority to close a river to boating. However, the General Assembly did not choose to apply criminal sanctions to one who fails to obey the order of the sheriff prohibiting boating. Section 33–31–114 alone cannot constitutionally be used as a basis to convict the defendants of kayaking on the Eagle River when the sheriff had ordered it closed.

Judgment affirmed.