The PEOPLE of the State of
Colorado, Petitioner

v.

Richard Anthony HERNANDEZ,
Respondent.

No. 09SC615.

Supreme Court of Colorado,
En Banc.

April 11, 2011.

Rehearing Denied May 9, 2011.

John W. Suthers, Attorney General, John T. Lee, Assistant Attorney General, Appellate Division, Criminal Justice Section, Denver, Colorado, Attorneys for Petitioner.

Douglas K. Wilson, Public Defender, Sarah A. Kellogg, Deputy Public Defender, Denver, Colorado, Attorneys for Respondent.

Justice MÁRQUEZ delivered the Opinion of the Court.

The issue raised in this case is whether a defendant may be convicted for leaving the scene of an accident based solely on his failure to identify himself to authorities at the scene as the driver of the vehicle involved in the accident.[1]

The defendant was convicted of violating sections 42–4–1601(1) and –1603(1), C.R.S. (2010), statutory provisions that require the driver of a vehicle involved in an accident resulting in injury to others to provide certain information before leaving the accident scene. The defendant did not identify himself at the scene as the driver; instead, his girlfriend provided the defendant's name and address but told authorities that she had been driving. The court of appeals reversed the defendant's conviction. It construed sections 42–4–1601(1) and –1603(1) to hold that a driver involved in an accident is not required to affirmatively identify himself to anyone at the scene as "the driver" if he otherwise provides his name, address, registration information for the vehicle, and, upon request, his driver's license. *People v. Hernandez*, 224 P.3d 343, 347–48 (Colo.App. 2009). We disagree and hold that sections 42–4–1601(1) and –1603(1) do require the driver of a vehicle involved in an accident to affirmatively identify himself as the driver before leaving the scene if that fact is not reasonably apparent from the circumstances. Any other construction would defeat the language and legislative purpose of these provi-

sions. Accordingly, we reverse the judgment of the court of appeals and remand for consideration of Hernandez's remaining claims.[2]

I. Factual and Procedural History

This case concerns an accident in which the identity of the driver was not readily apparent from the circumstances. In the early morning hours of September 18, 2005, defendant Richard Hernandez, his girlfriend, and two other friends left a party in Colorado Springs. They were traveling in the girlfriend's sport utility vehicle ("SUV"). A few blocks from the party, the SUV made a left turn and collided with an oncoming car, severely injuring its occupants. Another driver witnessed the accident and immediately summoned help. Police and an off-duty paramedic arrived at the scene within minutes and rendered medical aid. When authorities arrived, the SUV occupants were outside the vehicle. Officers asked who was driving the SUV. Hernandez's girlfriend told them she was the driver. She provided a written statement listing herself as the driver and including her name, address, driver's license number, and vehicle registration number. On the form provided, she listed Hernandez's name and address in the "passenger" section. At trial, the girlfriend testified that Hernandez helped her fill out the form and had provided his contact information.

Hernandez remained at the scene until his girlfriend was taken for sobriety testing. Officers did not ask him to provide his license or any additional information, and did not request that he stay longer. His girlfriend was charged with driving while intoxicated.

A few months later, Hernandez's girlfriend recanted her story and told officers that Hernandez had been driving the SUV at the time of the accident. The People then charged Hernandez with leaving the scene of an acci-

---

**1.** We granted the People's petition for a writ of certiorari to review the following issue:

Whether in order to fulfill the mandatory disclosure requirements of the leaving the scene of an accident statute, a driver involved in an accident must identify him or herself as the driver.

**2.** Hernandez raised additional challenges to his conviction and sentence on appeal; however, the court of appeals did not reach these arguments because it reversed the conviction on the statutory interpretation grounds discussed herein. Because we conclude the court's statutory interpretation was in error, we remand the case to the court of appeals for consideration of Hernandez's remaining claims.

dent, a class five felony pursuant to section 42–4–1601.[3] Specifically, they alleged Hernandez failed to provide the statutorily mandated information under section 42–4–1603(1).[4]

At trial, the prosecution urged the jury to find Hernandez guilty, among other reasons, "for not saying he was the driver." Hernandez asserted he was not guilty because (1) he was not the driver, and (2) in any event, he complied with the statutory requirements. At the close of the People's evidence, Hernandez moved for judgment of acquittal contending the People had failed to present "a prima facie case" that he had not complied with the express statutory requirements. The trial court denied the motion. Ultimately, the jury returned a guilty verdict. The trial court subsequently found Hernandez to be an habitual offender and sentenced him to twelve years in the Department of Corrections.[5]

On appeal, Hernandez did not contest that he was the driver of the SUV. Instead, he claimed the evidence was insufficient to support his conviction for leaving the scene of an accident because he had, in fact, provided his name and address, and section 42–4–1603(1) did not require him to affirmatively identify himself as the driver. The court of appeals agreed and reversed the conviction. *Hernandez*, 224 P.3d at 344–45.

The court reasoned that the plain language of section 42–4–1603(1) does not "expressly require [a] driver [involved in an accident] to identify himself as the driver to anyone." *Id.* at 346. The court concluded that any other interpretation would impermissibly extend the statute by implication to create a criminal offense where one does not otherwise appear. *Id.* The court also reasoned that the purposes of the statutory scheme are fully served where a driver remains at the scene and provides personal identifying information and reasonable assistance, even if he does not volunteer that he was the driver. *Id.* at 347. Accordingly, the court ruled that Hernandez could not be convicted of leaving the scene of an accident merely because he did not affirmatively identify himself as the driver. *Id.*

The People petitioned for a writ of certiorari to review the court of appeals' decision. We reverse and remand with directions.

## II. Analysis

The issue before us is whether sections 42–4–1601(1) and –1603(1) require a driver involved in an accident to identify himself as the driver before leaving the accident scene. Hernandez argues that section 42–4–1603(1) requires a driver to disclose his name, address, vehicle registration number, and driver's license upon request, but that this provision imposes no affirmative duty to identify himself *as the driver* before leaving the scene. We disagree.

### A. Standard of Review

In our de novo review of a statute, our "fundamental responsibility" is to deter-

---

**3.** Section 42–4–1601(1) states in relevant part that,

> [t]he driver of any vehicle directly involved in an *accident* resulting in injury to, serious bodily injury to, or death of any person shall immediately stop such vehicle at the scene of such accident or as close to the scene as possible but shall immediately return to and *in every event shall remain at the scene of the accident until the driver has fulfilled the requirements of section 42–4–1603(1).*

(Emphasis added.) Violation of subsection (1) is a class five felony where the accident results in serious bodily injury. § 42–4–1601(2)(b), C.R.S. (2010).

**4.** Section 42–4–1603(1) requires that,

> [t]he driver of any vehicle involved in an *accident* resulting in injury to, serious bodily injury to, or death of any person or damage to any

vehicle which is driven or attended by any person *shall give the driver's name, the driver's address, and the registration number of the vehicle he or she is driving and shall upon request exhibit his or her driver's license* to the person struck or the driver or occupant of or person attending any vehicle collided with and where practical shall render to any person injured in such accident reasonable assistance. . . .

(Emphasis added.)

**5.** The trial court found the People had proven beyond a reasonable doubt that Hernandez committed three prior felonies: (1) conspiracy to commit second degree assault (in violation of sections 18–3–203 and 18–2–201, C.R.S. (2010)); (2) second degree burglary (in violation of section 18–4–203(2)(a), C.R.S. (2010)); and (3) possession of a schedule II controlled substance (in violation of section 18–18–405(1)(a), C.R.S. (2010)).

mine and give effect to the General Assembly's purpose and intent in enacting it. *Alvarado v. People*, 132 P.3d 1205, 1207 (Colo. 2006). "In so doing, we look to the plain and ordinary meaning of the statutory language, and we construe [it] to further the legislative intent represented by the statutory scheme." *People v. Manzo*, 144 P.3d 551, 554 (Colo. 2006); *see also Jefferson Cnty. Bd. of Equalization v. Gerganoff*, 241 P.3d 932, 935 (Colo. 2010) ("The language at issue must be read in the context of the statute as a whole and the context of the entire statutory scheme.").

### B. Statutory Construction

Section 42–4–1603(1) provides in relevant part that "[t]he driver of any vehicle involved in an accident [resulting in injury or damage to others] shall give the driver's name, the driver's address, and the registration number of the vehicle he or she is driving and shall upon request exhibit his or her driver's license...." The statute also requires a driver to render "reasonable assistance" to any person injured in the accident and, thereafter, to report the accident to police if no officer is present. §§ 42–4–1603(1), (2); *see also* § 42–4–1606, C.R.S. (2010). If a driver does not comply with these requirements, he can be prosecuted for leaving the scene of the accident. § 42–4–1601(1). The seriousness of the offense depends on the extent of the injuries suffered by others in the accident.[6] § 42–4–1601(2); *cf. Manzo*, 144 P.3d at 555.

Although section 42–4–1603(1) does not explicitly state that the driver "shall identify himself as the driver," the language of the statute, which repeatedly and specifically refers to "the driver," logically implies such a requirement. *See People v. McNeese*, 892 P.2d 304, 311 (Colo.1995) (although the statute did not "expressly describe a culpable mental state," the implication of a mental state was necessary to give effect to the

statutory requirements). Any other construction would frustrate the legislative purpose of these provisions. *Frohlick Crane Serv., Inc. v. Mack*, 182 Colo. 34, 37–38, 510 P.2d 891, 892–93 (1973) (no court should interpret a statute to frustrate the intent of the legislature); *see also Alvarado*, 132 P.3d at 1207 (we will not interpret a statute to produce an illogical or absurd result).

### 1. Statutory Language

For purposes of Colorado's Uniform Motor Vehicle Law, a "driver" is defined as a person "who drives or is in actual physical control of a vehicle." § 42–1–102(27), C.R.S. (2010). The language of section 42–4–1603(1) repeatedly emphasizes the role of "the driver" of a vehicle involved in an accident. Specifically, where an accident resulting in damage or injury occurs, *"[t]he driver"* of an involved vehicle must stop, render aid as reasonable and necessary, and must provide *"the driver's* name," *"the driver's* address," and the registration number of *"the vehicle he or she is driving."* § 42–4–1603(1) (emphases added). The repeated and specific references to "the driver" establish that the information sought is relevant only inasmuch as it is the personal information of the individual who is *"the driver"* of the vehicle involved in the accident. The requirement that "the driver" give "the registration number of the vehicle *he or she is driving"* makes little sense unless the driver informs authorities and accident victims at the scene that "he or she was driving" the vehicle for which the registration number is being provided. *See State v. Wuteska*, 303 Wis.2d 646, 735 N.W.2d 574, 577–78 (Wis.Ct.App.2007) (requirement that the "operator" give the registration number "of the vehicle he or she is driving" implies obligation to inform that he or she is driving the vehicle). Similarly, the language requiring a driver to exhibit his or her license "upon request" is meaningless

---

**6.** A driver in any accident involving another vehicle driven or attended by a person must "fulfill[ ] the requirements of section 42–4–1603." § 42–4–1601(1) (accidents involving injury or death); § 42–4–1602(1), C.R.S. (2010) (accidents involving damage). The degree of criminal liability for failing to fulfill these obligations depends on the seriousness of the injury or damage resulting

from the accident. *See, e.g.,* § 42–4–1601(2) (violation is a class 1 misdemeanor traffic offense where an accident results in injury, a class 5 felony where an accident results in serious bodily injury, and a class 3 felony where an accident results in death); § 42–4–1602(1) (in an accident involving only damage, violation is a class 2 misdemeanor traffic offense).

unless the driver first identifies himself as the driver. *See id.* at 578.

We conclude that the express language of section 42–4–1603(1) can be given logical effect only if a driver identifies himself as a driver. *See, e.g., State v. Nazarian,* 125 Conn.App. 489, 8 A.3d 562, 568 (2010) (where statute imposed certain obligations on the "person operating a motor vehicle," the court "fail[ed] to see how a person ... can comply with those obligations when he has failed to identify himself as the operator of the motor vehicle").

### 2. Statutory Scheme

The broader statutory scheme here supports our interpretation of the specific language of section 42–4–1603(1). Sections 42–4–1601(1) and –1603(1) place affirmative duties on drivers, and drivers alone. These provisions place no duty on the driver to supply information about anyone else at the accident scene. And although presumably there is value in such information, these provisions do not compel any other party—passenger, witness, or otherwise—to disclose his or her own identifying information or role in the accident. Indeed, even where a driver is physically unable to comply with the disclosure requirements, a passenger who is able to do so must give only *the driver's* information, nothing more. § 42–4–1607(1), C.R.S. (2010). This scheme reflects the General Assembly's overriding concern with identifying drivers who are involved in an accident and the legislature's intent to place affirmative duties on drivers.

### 3. Legislative Purpose

Our interpretation of section 42–4–1603(1) best effectuates the legislative purpose of enacting mandatory driver disclosure requirements. *See Spahmer v. Gullette,* 113 P.3d 158, 162 (Colo.2005) (this court "strive[s] to give effect" to legislative intent "and adopt[s] the statutory construction that best effectuates the purpose[ ] of [the] legislative scheme").

In *People v. Rickstrew,* we stated that in enacting sections 42–4–1601(1) and –1603(1),[7] the General Assembly intended to compel a driver to (1) "stop and render immediate and urgent assistance to the injured parties," and (2) "exchange information." 775 P.2d 570, 575 (Colo.1989). More recently, we have also observed that the General Assembly's prohibition against leaving the scene of an accident is "designed to guard the social order." *Manzo,* 144 P.3d at 558.

Here, the court of appeals interpreted our prior pronouncements to conclude the "twin purposes" of the statutes are to "(1) minimize the harm that may result from a driver fleeing the scene of the accident, and (2) ensure social order by penalizing drivers who do not stop at accident scenes." *Hernandez,* 224 P.3d at 347. We disagree with the court of appeals' limited characterization of the General Assembly's purpose and intent in enacting these provisions. By focusing on the concerns of rendering aid and penalizing drivers who flee the scene, the court of appeals' decision diminishes the distinct and equally important legislative purpose of requiring the exchange of driver information. *See Rickstrew,* 775 P.2d at 575 (the gravamen of the statute in part is "to exchange information"). As such, the court of appeals' view fails to give effect to all parts of the statute. *See* § 2–4–201(1)(b), C.R.S. (2010) (establishing presumption that the "entire statute is intended to be effective"); *People v. Terry,* 791 P.2d 374, 376 (Colo.1990) (we give effect to all parts of a statute such that none are rendered meaningless).

The requirement to exchange driver information is distinct from the requirement to render aid. A driver involved in an accident need not admit his role as driver in order to provide reasonable assistance to those injured. Indeed, it is unnecessary to require a driver to provide any identifying information whatsoever if the purpose of the statute is simply to obtain reasonable assistance. As for penalizing drivers who fail to remain at the scene and render reasonable assistance, the requirement to exchange driver informa-

---

**7.** Sections 42–4–1601 and –1603 were previously codified at 42–4–1401 and –1403. The General Assembly relocated the statutes to their current location in 1994 (effective Jan. 1, 1995). *See* ch. 337, sec. 1, §§ 42–4–1601 and –1603, 1994 Colo. Sess. Laws 2399–2400.

tion does not necessarily advance this legislative goal. Although obtaining the driver's name and address would facilitate prosecution of a driver who flees, a driver who fails to stop provides no information whatsoever. Thus, it is paradoxical to conclude the purpose of the statute is to require a driver who flees to first disclose his or her identity.

Instead, the mandatory disclosure requirements imposed on drivers in section 42–4–1603(1) serve a purpose independent of the duty to stop and render aid. The only plausible purpose of requiring such exchange of information is to identify *the drivers* of vehicles involved in accidents.

■ We have previously observed that the provisions of the traffic code aim to advance the public safety interest in regulating the "dangerous activity" of driving. *Manzo*, 144 P.3d at 556 (quoting *People v. Ellison*, 14 P.3d 1034, 1039 (Colo.2000)). In enacting the disclosure provisions at issue here, the legislature intended to "advance the state's interest in promoting driver responsibility." *Manzo*, 144 P.3d at 556. Logically, "driver responsibility" is promoted by regulating *drivers* as opposed to passengers or other witnesses.

In short, by imposing disclosure obligations on the driver alone and by referring repeatedly to information concerning "the driver," the statute reflects the General Assembly's intent to promote driver responsibility by requiring *"the driver"* of the vehicle involved in the accident to identify himself and his role in the accident as the driver. Consequently, it cannot be said that the purpose of the statute is fulfilled where a driver simply provides contact information while obfuscating his role as the driver. *See, e.g., Lumbardy v. People*, 625 P.2d 1026, 1027 (Colo.1981) (describing "identical" Arizona "hit and run" statute and observing that the "'gist of the offense is in concealing, or attempting to conceal the identity of one involved in an automobile accident wherein personal injuries are sustained'") (quoting *State v. Milligan*, 87 Ariz. 165, 349 P.2d 180, 183 (1960)). Such a result does not advance the public safety interest in regulating the dangerous activity of driving, nor does it fulfill the General Assembly's intent to pro-

mote driver responsibility by identifying drivers who are involved in accidents causing injury to others. To the contrary, allowing a driver to conceal his role as the driver in an accident would thwart those very purposes.

## C.  Application

■ In most circumstances, the very act of providing the statutorily required disclosures will make a driver's role in the accident clear: a driver who furnishes his contact, license, or registration information in response to an officer or injured party's question, "Who was driving?" or in response to a request for driver information, thereby conveys that he was the driver. Similarly, other circumstances or non-verbal conduct of the driver often will make the driver's role obvious to those at the scene. Typically then, a driver who does not expressly announce "I am the driver" does not violate the statutory provisions because his role as driver will be reasonably apparent from the circumstances.

In this case, Hernandez, a driver who was physically capable of responding, failed to comply with the requirements of section 42–4–1603(1) because, although he gave personal identifying information, he did not identify himself as "the driver." Indeed, he instead provided misinformation regarding his role in the accident (by indicating he was a passenger and failing to correct false representations made by his girlfriend who claimed to be the driver). Such conduct thwarts the purpose of the statutes.

■ We are mindful that failure to comply with section 42–4–1601 is a strict liability offense. *See Manzo*, 144 P.3d at 555, 558. In theory, a driver could unintentionally violate the statutory provisions by failing affirmatively to declare he was the driver, subjectively believing that role to be apparent, and without knowing that the circumstances indicated otherwise (e.g., that someone else claimed to be the driver). Presumably, however, authorities faced with ambiguous circumstances will provide the actual driver with an opportunity to clarify his role. Indeed, in this case, Hernandez had just such an opportunity as he stood by his girlfriend and not only failed to identify himself as the

driver, but helped her fill out a report with affirmatively misleading information.[8] As a practical matter, then, criminal liability based solely on the failure to identify oneself as the driver under section 42–4–1603(1) will be limited to rare circumstances such as this case, where a driver's conduct or omissions obfuscate his role as the driver and thereby thwart the language and purpose of the statutes.

### D.  Defendant's Arguments

Hernandez would have us rely, as the court of appeals did, on *People v. Mullady*, 178 A.D.2d 614, 577 N.Y.S.2d 491, 491–92 (N.Y.App.Div.1991), and the dissent in *People v. Kroncke*, 70 Cal.App.4th 1535, 83 Cal. Rptr.2d 493, 508–10 (1999) (Corrigan, J., dissenting).  We decline to do so.

In *Mullady*, the court simply stated, without analysis or explanation, that the New York traffic statute at issue "places no affirmative obligation upon a driver of a motor vehicle to identify himself as the driver." 577 N.Y.S.2d at 492.  This unsubstantiated conclusion does not dissuade us from adopting our own analysis.

In *Kroncke*, a driver whose passenger leapt from his moving car identified himself to officers as the driver of a nearby vehicle, but did not indicate his involvement in the accident (indeed, he denied ever having seen the victim before).  83 Cal.Rptr.2d at 495–97. The majority opinion concluded that California's similar statute[9] was "concerned not with just a driver and not with just a vehicle,

but with the driver of a vehicle *involved in an accident*." *Id.* at 500 (quoting *People v. Monismith*, 1 Cal.App.3d 762, 81 Cal.Rptr. 879, 882 (1969)) (emphasis in original).  It thus reasoned that, "to comply in a meaningful way with the statute, a driver must identify himself as the driver of a vehicle involved in the accident." *Id.*  The dissent, by contrast, contended the state's statute was designed only to secure information about personal identity; thus, a driver need not affirmatively disclose his status as the driver. *Id.* at 509–10.

We agree with the majority opinion in *Kroncke* and with other appellate courts that have considered similar statutes.  *See, e.g., Nazarian*, 125 Conn.App. 489, 8 A.3d at 565–68 (where driver in accident provided his own contact information but affirmed false statements by his passenger claiming to be the driver, court concluded Connecticut's statute obligated driver to identify himself as the driver); *Wuteska*, 735 N.W.2d at 576–78 (where driver affirmed her husband's statement that he, rather than she, was the driver, court held that she could not comply with Wisconsin's statutory requirements without identifying that she was the operator of the vehicle involved in the accident).  In our view, the statutory language of section 42–4–1603(1) reflects the General Assembly's intent to identify "the driver" of a vehicle involved in an accident.  Thus, to divorce an individual's name, address, vehicle, and license information requirements from his role as the driver fails to fulfill that legislative purpose.[10]

---

8.  A person who knowingly gives false driver information to law enforcement authorities could be prosecuted for the more general crime of false reporting under sections 18–8–111(1)(c) and (d), C.R.S. (2010).  However, the General Assembly has chosen to impose specific reporting obligations on drivers involved in accidents and to tether criminal liability for a driver's failure to comply with those specific reporting obligations to the degree of injury or damage resulting from an accident. *See supra* note 6.  Moreover, in this context, a driver's reporting obligations extend broadly to "the person struck or the driver or occupant of or person attending any vehicle collided with." § 42–4–1603(1).  Thus, section 42–4–1603(1) imposes liability on a driver who fails to provide driver information (or provides false information) to persons other than law enforcement authorities.

9.  The pertinent California statutes require "[t]he driver of any vehicle involved in an accident resulting in injury to any person ... [to] immediately stop the vehicle at the scene of the accident ... [and to] give his or her name, current residence address, [and] ... the registration number of the vehicle he or she is driving" to officers at the scene. *Kroncke*, 83 Cal.Rptr.2d at 499 (citing Cal. Veh.Code §§ 20001 & 20003 (West 2010) (internal quotations omitted)).

10.  If anything, the language of section 42–4–1603(1) is even more specific than the statutes at issue in *Kroncke, Nazarian*, and *Wuteska*.  Those provisions required only that a driver "give *his* ... name [and] address." *See Kroncke*, 83 Cal. Rptr.2d at 499 (discussing Cal. Veh.Code §§ 20001 & 20003); *Nazarian*, 8 A.3d at 568 (discussing Conn. Gen.Stat. Ann. § 14–224(a)

Hernandez also argues that interpreting the statute to require a driver to identify himself as the driver improperly extends criminal liability by implication. He relies on *People v. Boyd*, 642 P.2d 1 (Colo.1982), and *People v. Home Insurance Co.*, 197 Colo. 260, 591 P.2d 1036 (1979), to support his claim that "[s]uch an interpretation would 'create a criminal offense where one otherwise does not appear.'" We disagree.

In both *Boyd* and *Home Insurance Co.*, we refused to infer criminal liability where the statutes at issue did not expressly criminalize the violation of an authorized civil order. *See Boyd*, 642 P.2d at 3 (although statute empowered sheriff to issue an order closing a body of water, "no relevant statutory provision makes punishable as a crime a person's disobedience of [that order]"); *Home Ins. Co.*, 197 Colo. at 262–63, 591 P.2d at 1037–38 (where General Assembly provided for the confidentiality of medical records but imposed no criminal sanctions for invasion of such confidentiality, violation could not be criminally prosecuted as theft). In those cases, we reasoned that although the General Assembly had "empower[ed] authorities to forbid certain acts," the absence of any provision criminalizing the failure to abide by that prohibition precluded us from inferring criminal liability for such failure. *Boyd*, 642 P.2d at 3–4; *see also Home Ins. Co.*, 197 Colo. at 263, 591 P.2d at 1037–38. The reasoning of those cases is inapposite here where the General Assembly has expressly criminalized failure to comply with the statutory disclosure provisions. *See* § 42–4–1601(2). Our conclusion that section 42–4–1603(1) requires a driver to identify himself as the driver does not imply nor import an *additional* requirement into the statute or create criminal liability where it otherwise does not appear. To the contrary, sections 42–4–1601 and – 1603 already criminalize certain conduct. We simply construe these provisions to give effect to the General Assembly's purpose and intent in enacting them, and to prevent that purpose and intent from being thwarted.

### III. Conclusion

We hold that sections 42–4–1601(1) and – 1603(1) require a driver of a vehicle involved in an accident to affirmatively identify himself as the driver before leaving the scene of the accident if that fact is not otherwise reasonably apparent from the circumstances. Accordingly, we reverse the judgment of the court of appeals and remand the case to that court for consideration of Hernandez's remaining appellate challenges.

Justice MARTINEZ dissents.

Justice MARTINEZ, dissenting.

The sole issue before us is whether sections 42–4–1601(1) and –1603(1), C.R.S. (2010), require a driver involved in an accident to identify himself as the person driving the vehicle, or otherwise admit to driving. *See* maj. op. at 570. There is no question that neither section 42–4–1601, nor section 42–4–1603, contains an express identification requirement. There is, however, a serious question as to whether such an identification requirement can be implied into these two provisions.

On the one hand, the majority explains that the language of the statute, which repeatedly references "the driver" in section 42–4–1603(1), "logically implies" an identification requirement. *Id.* at 571. The majority further explains that the General Assembly enacted sections 42–4–1601(1) and –1603(1) to compel a driver to "exchange information." *Id.* at 572 (quoting *People v. Rickstrew*, 775 P.2d 570, 575 (Colo.1989)). The majority declares that the "only plausible purpose of requiring such exchange of information is to identify *the drivers* of vehicles involved in accidents." *Id.* at 573. The majority thus concludes that the statute, in order to reflect the General Assembly's intent, must implicitly require the driver to identify himself as such or otherwise admit to driving.

Alternatively though, it is at least equally plausible that the General Assembly purposefully omitted the identification requirement

(West 2010)); *Wuteska*, 735 N.W.2d at 578 (discussing Wis. Stat. Ann. § 346.67(1)(a) (West 2010)). By contrast, section 42–4–1603(1) repeats that a driver must provide "the *driver's*

name" and the *"driver's* address," emphasizing with even greater clarity the significance of the person's role as the driver.

that it did not include in the text of either section 42–4–1601 or –1603. As drafted, the statute merely requires the driver to provide "the driver's name," "the driver's address," and "the registration number of the vehicle he or she is driving." § 42–4–1603(1). The statute thus appears to carefully avoid requiring the driver to admit to driving and instead focuses on obtaining his name, address, and registration number. Because the statute lacks the simple requirement that the driver admit to driving, it could be inferred that the General Assembly did not intend to criminalize the driver's failure to identify himself as the person driving the vehicle—a potentially incriminating admission.

That is, the statutory text may reveal the General Assembly's intent to stop short of requiring drivers to admit to driving a vehicle involved in an accident. Instead, the General Assembly designed the statute to promote the "exchange of information" by merely requiring the driver to provide his name, address, and the registration number of his vehicle. After all, the General Assembly may have reasoned, it is not difficult to ascertain the identity of the driver through an accident-scene investigation.

In this light, there are at least two possible ways to interpret the General Assembly's intention as shown by its omission of an identification requirement from sections 42–4–1601 and –1603. The majority, however, overlooks the possibility that the General Assembly's intention may be consistent with the precise language of the statute. Instead, the majority identifies, as an overarching concern, the possibility that a driver could technically comply with the statute as written while "provid[ing] misinformation about his role in the accident (by indicating he was a passenger and failing to correct false representations made by his girlfriend who claimed to be the driver)." Maj. op. at 573. Such a result, the majority claims, "thwarts" the General Assembly's intent. *Id.* at 573. To prevent such an outcome then, the majority assumes that section 42–4–1603(1) must

criminalize the driver's failure to identify himself as such even though it contains no such explicit requirement.

In its zeal to punish drivers who provide misinformation to authorities, the majority too easily dismisses the fact that the General Assembly has already criminalized false reporting to authorities. Section 18–8–111, C.R.S. (2010), provides that it is a misdemeanor for a person to commit false reporting to authorities.[1] Quite simply then, the driver who obfuscates or deceptively conceals his identity as the driver can be prosecuted for a Class 3 misdemeanor under section 18–8–111. Because this section of the criminal code addresses the majority's concern, there is no need to imply an identification requirement into section 42–4–1603 to catch those drivers who provide misinformation.

Indeed, by implying an identification requirement into the statute, the majority unnecessarily expands the scope of section 42–4–1603 to encompass conduct that is already criminalized under section 18–8–111. In so doing, the majority circumvents the General Assembly's carefully calibrated statutory scheme and express decision to classify false reporting as a Class 3 misdemeanor offense, not a strict liability felony. *See* § 18–8–111(2). As a result, the majority affirms Hernandez's conviction for a Class 5 felony under section 42–4–1603 and his resultant twelve-year sentence under the habitual criminal sentencing statute. This twelve-year sentence exceeds Hernandez's criminal liability if he had been charged for a misdemeanor under section 18–8–111, a charge that would not trigger liability under the habitual criminal sentencing statute.

The majority's error is further compounded by its disregard for the fact that section 42–4–1603 is a strict liability statute. The majority recognizes that, as a result of implying an identification requirement into the statute, "a driver could unintentionally violate the statutory provisions by failing affirmatively to declare he was the driver, subjec-

---

**1.** Section 18–8–11(1)(c) provides that a person commits false reporting if:

He or she makes a report or knowingly causes the transmission of a report to law enforcement authorities pretending to furnish infor-

mation relating to an offense or other incident within their official concern when he or she knows that he or she has no such information or knows that the information is false[.]

tively believing that role to be apparent, and without knowing the circumstances indicated otherwise (e.g., that someone else claimed to be the driver)." Maj. op. at 573. To diffuse this concern, the majority explains, "Presumably, however, authorities faced with ambiguous circumstances will provide the actual driver with an opportunity to clarify his role." *Id.*

This presumption is hardly reassuring. As an initial matter, there is no guarantee that the police will question the individuals at the scene of an accident and request that they admit to driving the vehicle involved in the accident. More problematic, the majority's presumption overlooks our well-settled law regarding the concepts of due process and notice. As we explained in *People v. Castro*, "Due process of law is satisfied as long as the statutory terms 'are sufficiently clear to persons of ordinary intelligence to afford a practical guide for law-abiding behavior and are capable of application in an even-handed manner by those responsible for enforcing the law.'" 657 P.2d 932, 939 (Colo.1983) (quoting *People ex rel. City of Arvada v. Nissen,* 650 P.2d 547, 551 (Colo.1982)). Here, however, neither section 42–4–1601 nor section 42–4–1603 contains an express identification requirement that would alert drivers to the potential for criminal liability if they failed to affirmatively admit they were driving. Indeed, the majority recognizes that a driver could, "without knowledge," be held liable for failing to admit to driving (e.g. when someone else claims to be the driver without the actual driver's knowledge). Its presumption that a police officer will ask the right questions at the accident scene does little to cure the lack of notice to drivers, let alone ensure that the law is enforced in an even-handed manner.

Fundamentally, the majority's erroneous and problematic interpretation of sections 42–4–1601 and –1603 stems from its disregard for the principle that criminal statutes "must be strictly construed in favor of the accused and they cannot be extended either by implication or construction." *People v. Home Ins. Co.,* 197 Colo. 260, 262, 591 P.2d 1036, 1037 (Colo.1979); *see also People v. Boyd,* 642 P.2d 1, 4 (Colo.1982). In *Home Insurance,* we faced the issue of whether defendants could be convicted under Colorado's theft statute for stealing a "thing of value," namely confidential medical information. *Id.* at 261, 591 P.2d at 1036. Our theft statute at the time, section 18–1–901(3)(r), C.R.S. (1973), did not, however, explicitly list medical records as a "thing of value." In contrast, however, we noted that the General Assembly had already imposed (1) civil penalties to protect medical information and (2) criminal penalties for the violation of analogous privacy interests. *Id.* at 262–63, 591 P.2d at 1037. In light of these civil and criminal statutes, we explained:

> The legislature, therefore, has taken specific steps to protect the confidentiality of medical information by creating statutory duties, the breach of which could serve as the basis for a civil remedy. However, the legislature has not imposed criminal penalties for violations of the confidentiality or privilege.

*Id.* at 263, 591 P.2d at 1037. We honored the General Assembly's competent decision to *not* impose criminal liability for the theft of medical information by steadfastly refusing to "expand unduly the traditional concept of intangible property" to encompass confidential medical records. *Id.* at 262, 591 P.2d 1036.[2]

*Home Insurance* governs our statutory analysis of sections 42–4–1601 and –1603. It is undisputed that neither of these provisions contains an express identification requirement. To the contrary, the General Assembly has explicitly identified the information the driver must provide: the driver's name, the driver's address, and the registration number for the vehicle he or she is driving. *See* § 42–4–1603(1). Furthermore, the General Assembly has already criminalized false reporting to authorities. *See* § 18–8–111.

2. Our current theft statute, section 18–1–901(3)(r), C.R.S. (2010), now defines a "thing of value" to explicitly include "medical records information." This confirms our reasoning in *Home Insurance* that the General Assembly "has

the legislative competence, if inclined to do so, to make illegal the invasion of privacy or confidentiality." 197 Colo. at 262, 591 P.2d at 1037. A court should not therefore expand criminal statutes by implication or construction.

The General Assembly has, therefore, demonstrated its competence to impose specific duties on drivers involved in accidents. Pursuant to *Home Insurance* then, we must honor the General Assembly's legislative decision by refusing to extend criminal liability by implication or construction.

To avoid *Home Insurance*, the majority attempts to narrow and distinguish it from the instant case. The majority explains that *Home Insurance* stands for the simple proposition that a court should not criminalize civil violations. Maj. op. at 575. In *Home Insurance*, the majority explains, we did not extend criminal liability to the theft of medical information because the General Assembly had only imposed civil penalties to protect such information. *Id.* Based on this reading, the majority concludes that *Home Insurance* is inapposite here where the General Assembly has expressly criminalized the failure to comply with the statutory disclosure provisions. *Id.* at 575.

The majority misreads our analysis in *Home Insurance*. In that case, we cited the General Assembly's decision to impose civil penalties to protect confidential medical information. 197 Colo. at 262–63, 591 P.2d at 1037. We then explained that "[t]he foregoing amply demonstrates that the General Assembly has legislative competence, if inclined to do so, to make illegal the invasion of privacy or confidentiality." *Id.* at 262, 591 P.2d at 1037. The crux of our analysis, then, was our observation that the General Assembly had demonstrated its competence to criminalize certain conduct by imposing civil penalties. As such, it would have been improper to extend criminal liability by implication or construction. The majority thus erroneously simplifies *Home Insurance* to stand for the position that we may not criminalize civil penalties. In so doing, the majority waters down the fundamental principle that criminal statutes "cannot be extended either by implication or construction." *Id.; see also Boyd*, 642 P.2d at 4. As a result, the majority overlooks the real possibility that the General Assembly competently and purposefully designed sections 42–4–1601 and –1603 to omit an identification requirement.

In sum, the majority implies an identification requirement into sections 42–4–1601 and –1603, thereby extending the scope of criminal liability to encompass a driver who fails to affirmatively identify himself as the driver of the vehicle. This requirement is nowhere to be found in the text of these provisions. It is therefore reasonable to conclude that the Generally Assembly did not intend to include an identification requirement in either sections 42–4–1601 or –1603, reasoning that such a requirement was neither necessary to promote the exchange of information nor essential to punish drivers who falsely report to authorities. Implying such an identification requirement contravenes the General Assembly's intent and upsets its carefully crafted statutory scheme. Accordingly, I respectfully dissent.